**Laura WILMARTH, Plaintiff,**

v.

**CITY OF SANTA ROSA,
et al., Defendants.**

**No.  C–95–2623 DLJ.**

United States District Court,
N.D. California.

Oct. 1, 1996.

---

Dennis J. Byrne, Belden, Abbey, Weitzenberg & Kelly, Santa Rosa, CA, for Plaintiff.

Theresa L. Cunningham, City Attorney for the City of Santa Rosa, CA, for Defendants.

## ORDER

JENSEN, District Judge.

On September 18, 1996, the Court heard argument on defendant's motion for summary judgment. Dennis Byrne appeared on behalf of plaintiff; Theresa Cunningham appeared for defendant. Having considered the arguments of counsel, the papers submitted, the applicable law, and the record in this case, the Court hereby GRANTS defendant's motion for summary judgment.

## I. BACKGROUND

A. *Factual Background and Procedural History*

Plaintiff Laura Wilmarth was a "senior clerk typist" in the Santa Rosa Police Department. Plaintiff's job consisted of handling all arrangements for training and travel for the department, handling licensing and permits issued by the department, and providing general clerical support for Sergeant Gary Negri and the sworn officers in her unit.

Defendant alleges that the job requires a minimum of four hours typing per day, which amount can increase dramatically depending on special assignments. Plaintiff has agreed with this estimate on numerous occasions. She now claims that this time estimate includes time she spent stopping whatever typing project she was working on to use the telephone, to answer travel-related questions, or to meet with individuals regarding permits or licenses.

Beginning in January 1994, plaintiff developed carpal tunnel syndrome in her right wrist. In March, she developed the syndrome in her left wrist. From January through April 1994, plaintiff worked a light duty shift in her job. During this time some of her duties were reassigned to other employees and Sergeant Negri appealed to his Captain to direct work to other units if possible. In late March, Sergeant Negri also requested a temporary clerk typist to get the clerical work done that was backed up in his unit due to plaintiff's typing restrictions.

A physical therapist, Mike Seger, evaluated plaintiff's workstation in March 1994. He adjusted the workstation, giving plaintiff suggestions for her chair, her posture, stretching exercises and the location of certain equipment. It was shortly after this evaluation that plaintiff developed the carpal tunnel syndrome in her left wrist.

Plaintiff was ordered off work completely by her family doctor, Dr. Stewart, in April 1994. In June 1994, Dr. Stewart referred plaintiff for local orthopedic care. Plaintiff refused this referral, insisting on treatment at Stanford University Medical Center. Plaintiff filed three workers' compensation claims based on her carpal tunnel syndrome. Between June 1994 and January 1995 plaintiff continued to refuse local medical treatment. The City's third-party workers' compensation administrator, REMIF, determined that Stanford was outside the reasonable geographic area and that treatment for carpal tunnel syndrome was available locally. In August and November 1994, plaintiff refused vocational rehabilitation offered by workers' compensation, still claiming she was waiting for treatment at Stanford. In September 1994 and January 1995, the Workers' Compensation Appeal Board denied plaintiff's request for treatment at Stanford.

In August 1994, plaintiff told Sergeant Negri that she was not able to come back to work. Because plaintiff was not undergoing any treatment for her condition, REMIF sent her to Dr. Whiteley for an evaluation. Dr. Whiteley placed a two-hour typing restriction on plaintiff in August 1994.

Based on Dr. Whiteley's restriction, the city's Risk Manager Bill Kaslar asked the Police and Personnel Departments if plaintiff could be accommodated in her present job or if there were any other available jobs which she could perform in the city. The Police Department determined that typing longer than two hours per day was essential to the senior clerk typist position and that it could not accommodate plaintiff's restrictions. The Department also decided that it would be undue hardship to reassign plaintiff's typing tasks to other clerical staff. There were no vacancies for clerk typists at the time and there was no authorization in the budget for an additional senior clerk typist position.

The city's Personnel Director, Karen Walker, looked citywide for vacant positions. There were no vacant clerk typist positions, nor were any soon to be vacant. After speaking with Mr. Kaslar and Police Chief Sal Rosano, Walker determined that there were no other positions to which plaintiff could be transferred.

After determining that plaintiff could not be accommodated, Mr. Kaslar then informed plaintiff's workers' compensation attorney that Mr. Kaslar would be required to make an application for a disability retirement for plaintiff with the California Public Employees Retirement System (PERS). In September 1994 he did so. PERS determined that plaintiff was unable to do the material tasks of her position and granted the retirement.

Defendant then initiated an application, which was granted, for disability benefits for plaintiff with Standard Insurance Company. In addition, plaintiff applied for and received disability benefits from her private insurer, State Farm Insurance Company. Plaintiff also applied for but was denied Social Security benefits.

In September 1994, plaintiff was evaluated by a doctor of her choice, Dr. Kurtz, who gave her a one-hour typing restriction and concluded that she was not capable of resuming her senior clerk typist job. Also in September 1994, plaintiff filed a grievance claiming that she had been prematurely retired, that she should be given treatment at Stanford, and that she was not reasonably accommodated. Plaintiff also submitted a letter requesting a promotion to a Police Technician position as an accommodation. Plaintiff's request for the promotion was denied because there were no vacancies and because a collective bargaining agreement prohibited automatically promoting her into a different job classification. Plaintiff now claims that the city should have accommodated her by either restructuring her job, retraining plaintiff for an alternate position for which she was qualified, or utilizing ergonomic devices to deal with plaintiff's problems with repetitive motor tasks.

After the Workers' Compensation Appeal Board's second denial of her claim in January 1995, plaintiff took Dr. Stewart's referral to a local doctor, Dr. Canales. Dr. Canales performed two carpal tunnel release surgeries and cleared plaintiff to return to full clerical duties in March 1996. Plaintiff has now been released from all work restrictions and has been released from her disability retirement with PERS. Defendant refuses to reinstate plaintiff unless plaintiff dismisses this lawsuit.

In October 1994, plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC). The EEOC issued plaintiff a right-to-sue letter on May 26, 1995. Plaintiff claims in this suit that her retirement violates the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. and the California Fair Employment and Housing Act (FEHA), Cal. Gov't.Code § 12900 et seq., because she was not reasonably accommodated.

Defendant now moves for summary judgment on both of plaintiff's disability discrimination claims.

### B. Legal Standard

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interroga-

tories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

In a motion for summary judgment, "[i]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, '*specific facts* showing that there is a genuine issue for trial.'" *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986).

A moving party who will not have the burden of proof at trial need only point to the insufficiency of the other side's evidence, thereby shifting to the nonmoving party the burden of raising genuine issues of fact by substantial evidence. *T.W. Electric,* 809 F.2d at 630 *citing Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Kaiser Cement,* 793 F.2d at 1103–04.

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *T.W. Electric,* 809 F.2d at 630–31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Ting v. United States,* 927 F.2d 1504, 1509 (9th Cir.1991).

The evidence the parties present must be admissible. Fed.R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and mov-

ing papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. Niagara Falls,* 754 F.2d 49 (2nd Cir.1985); *Thornhill Pub. Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979). Hearsay statements found in affidavits are inadmissible. *See, e.g., Fong v. American Airlines, Inc.,* 626 F.2d 759, 762–63 (9th Cir.1980). The party who will have the burden of proof must persuade the Court that it will have sufficient admissible evidence to justify going to trial. The standard for judging a motion for summary judgment is the same standard used to judge a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## II. ARGUMENTS

### A. "Disability"

Under the Americans with Disabilities Act (ADA), an employer may not "discriminate against a qualified individual with a disability." 42 U.S.C. § 12112(a). Thus, as a threshold matter in any ADA case, the plaintiff must present sufficient evidence that she had a "disability." Defendant argues that plaintiff has failed to present evidence sufficient to create a factual issue as to whether her carpal tunnel syndrome was a disability as that term is defined by the ADA.[1]

Under the ADA, an individual is considered to have a "disability" if that individual either (1) has a physical or mental impairment that substantially limits one or more of the major life activities of such individual, (2) has a record of such impairment, or, (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2).

---

1. The ADA definition of "disability" applies to the FEHA claim as well. The FEHA specifically provides that:

> if the definition of 'disability' used in the Americans with Disabilities Act of 1990 (Public Law 101–336) would result in broader protection of the civil rights of individuals with a mental

> disability or physical disability, as defined in subdivision (i) or (k), ... then that broader protection or coverage shall be deemed incorporated by reference into, and shall prevail over conflicting provisions of, the definitions in subdivisions (i) and (k).

Cal.Gov't Code § 12926(*l*).

**1276**

■ The Code of Federal Regulations defines "substantially limits" as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted in the condition, manner, or duration under which the individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1).[2] "Major life activities" include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, and working. 29 C.F.R. § 1630.2(i).

The three factors to be considered in determining whether a person's impairment is substantially limiting are: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2). In addition, where, as here, a plaintiff's contention is that she was substantially limited in the major life activity of working, the plaintiff must be

significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3)(i).

### 1. Plaintiff Did Not Have an Actual Disability

■ Defendant in the instant case asserts that, (1) as a matter of law, plaintiff's

carpal tunnel syndrome was not a disability under the ADA because it was a temporary condition, and (2) that a mere diagnosis of carpal tunnel syndrome is not sufficient to raise a genuine issue of fact as to disability. *McKay v. Toyota Mfg., U.S.A., Inc.,* 878 F.Supp. 1012, 1016 (E.D.Ky.1995); *see also, Lamury v. Boeing Co.,* 5 A.D. Cases 39, 1995 WL 643835 (D.Kan.1995); *Fink v. Kitzman,* 881 F.Supp. 1347, 1377 (N.D.Iowa 1995). Temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities. *See* EEOC Interpretive Guidance on Title I of the ADA § 1630.2(j)[3]; *Sanders v. Arneson Products, Inc.,* 91 F.3d 1351, 1354 (9th Cir.1996); *Rakestraw v. Carpenter Co.,* 898 F.Supp. 386, 389–91 (N.D.Miss.1995).

In the present case, plaintiff's injury was clearly temporary. Her carpal tunnel syndrome commenced in January 1994. Following two surgeries, plaintiff was cleared by her doctors to return to full clerical duties by March 1996. Plaintiff now tells the Court that she has been released from all work restrictions and has been released from her disability retirement with PERS. (Pl.'s opp. 5:24–26) Plaintiff's injury therefore lasted approximately two years. Moreover, plaintiff might have been cured even sooner had she not repeatedly refused treatment locally while insisting on treatment at Stanford. Plaintiff never even attempts to show that her condition was permanent. In fact, in her deposition, in a letter from her attorney to Mr. Kaspar, and in a letter to Dr. Canales, plaintiff insisted that her condition was temporary. (Wilmarth depo. 607:17–23; Def's mot. for summ. judg. Ex. L, p. 6, Ex. O, p. 12).

---

**2.** The EEOC has enacted regulations to implement the equal employment provisions of the ADA. In interpreting the meaning of a statute, substantial deference should be granted to the interpretation given its provisions by the agency charged with administering the statute. The agency's interpretation must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Oswalt v. Sara Lee Corp.,* 889 F.Supp. 253, 256 n. 1 (N.D.Miss. 1995) (quoting *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, ——, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994)).

**3.** The EEOC published as an appendix to its regulations a section-by-section "Interpretive Guidance of Title I of the Americans with Disabilities Act." Such administrative interpretations of the Act by the enforcing agency, "while not controlling upon the courts by reason of their authority, constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986).

Plaintiff still claims that she satisfies her burden on the disability issue by presenting evidence that she was unable to work in a broad range of jobs. She asserts that she was thus substantially limited in the major life activity of work. Plaintiff presents as evidence the declaration of James C. McGowan, a certified vocational rehabilitation counselor. Mr. McGowan, based on analysis of federal, state, and county job market data, states that it is his opinion that plaintiff was excluded due to her disability from performing most of the number and types of jobs available in Northern California utilizing similar training, knowledge, skills, and abilities that she possessed and that she was also excluded due to her disability from performing most of the number and types of jobs available in Northern California not utilizing similar training, knowledge, skills, or abilities that she possessed that she was otherwise qualified to perform. (McGowan decl. 5:20–28)

Even taking Mr. McGowan's statistical evidence into account, the Court finds that the nature of plaintiff's injury and its relatively short duration rendered any limitations on plaintiff's life activity of working insubstantial. Plaintiff's condition cannot be considered a significant barrier to employment because it was not long-lasting. Little more than two years after the onset of her carpal tunnel syndrome plaintiff was cleared by her doctors to return to work. Plaintiff's short-term "disability" therefore does not fall within the scope of the ADA's protections. In conclusion, plaintiff has failed to create a genuine issue of material fact as to her "disability."

### 2. Plaintiff Was Not "Regarded as Having a Disability"

Assuming plaintiff was not actually disabled, plaintiff also claims that she was "regarded as having a disability." An individual is "regarded as having a disability" if the individual has an impairment which is not substantially limiting but is perceived by the employer as substantially limiting. 29 C.F.R. § 1630.2(l).

Plaintiff claims that the facts that defendant submitted a disability retirement application to PERS and submitted an application for long-term disability benefits to Standard Insurance for plaintiff are proof that defendant regarded plaintiff as being disabled. However, plaintiff fails to contradict defendant's evidence that, while it believed plaintiff could not perform her job of senior clerk typist, it did not believe she was substantially limited in performing a wide range of jobs. Defendant only applied for disability for plaintiff after plaintiff was placed on restriction for typing and ordered off work by her doctors. Furthermore, defendant presents uncontradicted evidence that city officials attempted to accommodate plaintiff by putting her on light duty and by finding another job for her that would require less typing. This demonstrates that, while defendant believed plaintiff was incapable of typing, it did not regard plaintiff as "disabled" as defined by the ADA.

Plaintiff must prove either that she had a "disability" or that she was "regarded as having a disability" as part of her prima facie case under the ADA. Because she has failed to present evidence which creates a genuine factual dispute as to these issues, summary judgment is hereby granted for defendant.

### B. Essential Functions

Although it is unnecessary to reach the issue of whether plaintiff could perform the essential functions of her job, the Court will address the essential functions arguments because summary judgment is so clearly warranted on these grounds. The ADA prohibits discrimination on the basis of disability against *qualified* individuals with disabilities. A qualified individual is one who both satisfies the prerequisites for the position and who can perform the *essential functions* of the job with or without reasonable accommodation. 29 C.F.R. § 1630.2(m).

Defendant argues for summary judgment on plaintiff's disability discrimination claims on the grounds that plaintiff could not perform the essential duties of her job because she was restricted from typing more than two hours per eight hour shift. Therefore, the first issue to be addressed is whether typing for more than two hours per shift is

an essential function of the job of senior clerk typist.

### 1. *Typing is an Essential Function of Plaintiff's Job*

Under the ADA, the essential functions of a job are those functions that the jobholder must be able to perform unaided or with the assistance of reasonable accommodations. 29 C.F.R. § 1630.2(n).[4] The inquiry into whether a particular function is essential initially focuses on whether the employer actually requires employees in the position to perform those functions. If this test is met, the inquiry then focuses on whether removing the function would fundamentally alter that position. *Id.*

Evidence of whether a particular function is essential includes, but is not limited to:

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

*Id.* at § 1630.2(n)(3).

Defendant has presented evidence that typing is an essential function of plaintiff's position as senior clerk typist. First, in its written job description, defendant states that using a computer or typewriter to produce and edit letters, memoranda, reports, or other materials from rough draft or notes and using a computer to input and retrieve information are essential duties for the job classification. The description also says "much of the work consists of entering data into and retrieving data from personal computers and

terminals via keyboards...." (Def.'s mot. for summ. judg. Ex. G)

Next, plaintiff's supervisor Sergeant Negri states that plaintiff's position exists to provide clerical support, including typing, and that typing is an essential function of the job. He claims that the job requires a minimum of four hours of typing per day. (Negri decl. 3:15–18) Moreover, Shirley Braddy, who took over plaintiff's job, testified that she types or keyboards a minimum of four hours per day, sometimes more and never less. (Braddy decl. 2:1–5; Braddy depo. 67:2–7)

Plaintiff argues that defendant cannot rely on the job descriptions because they do not set forth any minimum required number of hours of typing. Plaintiff, however, presents no evidence to create a dispute as to this factual issue. In fact, plaintiff herself has admitted on several occasions, including in statements to her doctors, that she typed four to six hours per day in her job. (Def.'s mot. for summ. judg. Ex. A, 4:28–35, Ex. C, p. 12, Ex. D, p. 2, Ex. E, p. 2, Ex. F, p. 2)

■ Plaintiff now attempts to explain away her previous statements. In her declaration, she states, "It is my belief that this four to six hour period of time I referred to as being 'spent on the computer' also includes time I spent stopping whatever computer or typewriter project I was on to deal with interruptions." (Wilmarth decl. 7:18–21) This statement by plaintiff, in light of all the evidence to the contrary, is insufficient to create a genuine issue of material fact. Therefore, this Court finds that typing for a minimum of four hours per day is an essential function of the senior clerk typist job.

### 2. *Plaintiff Could Not Perform the Essential Functions of Her Job*

■ A plaintiff in an ADA suit must prove that she was able to perform the essential functions of her job. An employer will not be required to reasonably accommodate an employee by eliminating or reassigning essential job functions. *See Gilbert v. Frank*, 949 F.2d 637 (2d Cir.1991); *Hall v.*

---

**4.** The definition of and criteria for "essential functions" is the same under the FEHA. *See* Cal.Code Regs., title 2 § 7293.8(g).

*United States Postal Service*, 857 F.2d 1073, 1078 (6th Cir.1988). As discussed above, typing for a minimum of four hours per day is an essential function of the senior clerk typist position.

It is undisputed that plaintiff could not meet the typing requirements of her position.[5] In April 1994, plaintiff was ordered off work by Dr. Stewart. In August 1994, plaintiff told Sergeant Negri that she was not ready to return to work. Dr. Whiteley placed a typing restriction of two hours per eight hour shift on plaintiff in August 1994. Finally, in September 1994, Dr. Kurtz concluded that plaintiff could only type one hour per day and that plaintiff could not return to her usual job.

█ Thus, plaintiff clearly could not perform the essential function of typing for a minimum of four hours per day. Defendant could not have possibly reasonably accommodated plaintiff's inability to type more than two hours per day such that she could still perform the essential functions of her position. For this reason, defendant, as a matter of law, was not required to offer plaintiff any of the accommodations she requested. Because plaintiff presents insufficient evidence to create a genuine factual issue as to wheth-

er she could perform the essential functions of her job, summary judgment for defendant is appropriate on these grounds as well.

## III. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS defendant's motion for summary judgment.

IT IS SO ORDERED.

---

**5.** As a preliminary issue, defendant argues that plaintiff is estopped from even asserting that she could perform the essential functions of her job because she made statements in her applications for disability benefits that she was unable to perform those functions. *See, e.g., Baker v. Asarco, Inc.*, 5 A.D. Cases 187, 190, 1995 WL 795663 (D.Ariz.1995). Plaintiff counters that representations made to the Social Security Administration and insurance companies to receive disability benefits are not dispositive of whether an employee is qualified under the ADA. *See, e.g., Overton v. Reilly*, 977 F.2d 1190, 1196 (7th Cir. 1992).
Many courts have invoked the principle of judicial estoppel against plaintiffs who received disability benefits but still claimed they were able to perform the essential functions of their jobs. *See, e.g., Cline v. Western Horseman, Inc.*, 922 F.Supp. 442 (D.Col.1996); *Reiff v. Interim Personnel, Inc.*, 906 F.Supp. 1280, 1289 (D.Minn. 1995); *Smith v. Midland Brake, Inc.*, 911 F.Supp. 1351, 1357 (D.Kan.1995); *Garcia–Paz v. Swift Textiles, Inc.*, 873 F.Supp. 547, 555 (D.Kan. 1995). The Ninth Circuit recently addressed the issue of judicial estoppel in the context of an ADEA claim in *Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597 (9th Cir.) (1996). In *Rissetto*, the court held that plaintiff, having ob-

tained a favorable settlement on her Workers' Compensation claim for temporary total disability based on her assertion that she could not work, was estopped from claiming she was performing her job adequately.

In the present case, plaintiff likewise received an award from Workers' Compensation based on the fact that she was temporarily totally disabled. Furthermore, she received disability benefits from both Standard Insurance Company and State Farm Insurance Company based on her inability to work. For instance, on her application to Standard, she explained that she could not "perform repetitive tasks, ie., typing, writing, filing, etc. for any length of time...." due to her carpal tunnel syndrome. (Def's mot. for summ. judg. Ex. P, p. 10)

This Court would likely hold that plaintiff is estopped from claiming she was able to perform the essential functions of her job. However, it is not necessary for us to decide this issue here because, first, as discussed above, plaintiff has not shown that she was disabled, and second, as discussed below, even if plaintiff is allowed to present her evidence, it is insufficient to create a factual dispute as to whether she could perform the essential functions of her job.