LOWN v JJ EATON PLACE

Docket No. 205937. Submitted March 2, 1999, at Lansing. Decided June 4, 1999, at 9:05 A.M. Leave to appeal sought.

Joyce Lown brought an action in the Eaton Circuit Court against JJ Eaton Place, her former employer, alleging that endometriosis and a restriction placed on her by her physician against lifting more than fifteen pounds after surgery constituted a disability under the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 et seq.; MSA 3.550(101) et seq., and that the defendant terminated her employment as a cook in violation of the PWDCRA when she refused to perform dishwashing duties that would have involved lifting items weighing more than fifteen pounds. At the hearing on the defendant's motion for summary disposition, the plaintiff orally requested to be allowed to amend her complaint to allege other disabilities. The court, Calvin E. Osterhaven, J., denied the motion to amend and granted summary disposition for the defendant, ruling that the plaintiff was not disabled within the meaning of the PWDCRA. The plaintiff appealed.

The Court of Appeals held:

1. The issue regarding the trial court's denial of the plaintiff's request to amend her complaint is not preserved for appeal in the absence of a written order or judgment by the trial court denying the request. In any event, because the plaintiff failed to comply with the requirement of MCR 2.118(A)(4) that the amendment be in writing, the trial court did not abuse its discretion in denying the plaintiff's request.

2. The trial court did not err in granting summary disposition for the defendant. A handicap, for purposes of the PWDCRA, is a physical or mental impairment that substantially limits one or more major life activities and is unrelated to an individual's ability to perform the duties of a particular job or position or to the individual's qualifications for employment or promotion. In this case, the plaintiff failed to show that her lifting restriction substantially limited the major life activity of lifting or working.

Affirmed.

1. CIVIL RIGHTS — PERSONS WITH DISABILITIES — EMPLOYMENT DISCRIMINATION — PRIMA FACIE CASE.

A plaintiff seeking to establish a prima facie case of employment discrimination under the Persons with Disabilities Civil Rights Act must demonstrate that the plaintiff is disabled as defined by the act, that the disability is unrelated to the plaintiff's ability to perform the duties of a particular job, and that the plaintiff was discriminated against in one of the ways described in the statute (MCL 37.1101 *et seq.*; MSA 3.550[101] *et seq.*).

2. CIVIL RIGHTS — PERSONS WITH DISABILITIES — EMPLOYMENT DISCRIMINATION — DISABILITIES — MAJOR LIFE ACTIVITIES.

A disability, for purposes of the employment discrimination provisions of the Persons with Disabilities Civil Rights Act, is a determinable physical or mental characteristic that substantially limits one or more of the major life activities of the individual having the disability and is unrelated to the individual's ability to perform the duties of a particular job or position or to the individual's qualifications for employment or promotion; whether an impairment substantially limits a major life activity is determined in light of the nature and severity of the impairment, its duration or expected duration, and its permanent or expected permanent or long-term effect (MCL 37.1103[d][i][A]; MSA 3.550[103][d][i][A]).

3. CIVIL RIGHTS — PERSONS WITH DISABILITIES — EMPLOYMENT DISCRIMINATION — DISABILITIES — LIFTING RESTRICTIONS.

A medical restriction limiting the amount of weight an employee may lift constitutes a disability under the Persons with Disabilities Civil Rights Act when it imposes substantial limitations on the employee's ability to perform the normal activities of daily living; a lifting restriction of twenty-five pounds is not a substantial limitation and does not constitute a disability under the act (MCL 37.1103[d][i][A]; MSA 3.550[103][d][i][A]).

4. CIVIL RIGHTS — PERSONS WITH DISABILITIES — EMPLOYMENT DISCRIMINATION — DISABILITIES — MAJOR LIFE ACTIVITIES.

Working, in the absence of any other major life activity that is substantially limited by an individual's disability, may be considered a major life activity for purposes of the employment discrimination provisions of the Persons with Disabilities Civil Rights Act; a substantial limitation on the major life activity of working is shown upon a demonstration that the individual is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities; an impairment that interferes with an individual's ability to do a particular job, but does not significantly decrease the individual's ability to obtain satisfactory

employment elsewhere, does not substantially limit the major life activity of working (MCL 37.1103[d][i][A]; MSA 3.550[103][D][i][A]).

*Rapaport, Pollok, Farrell & Waldron, P.C.* (by *Mark S. Farrell*), for the plaintiff.

*Murphy, Brenton & Spagnuolo, P.C.* (by *Michael S. Wellman*), for the defendant.

Before: CAVANAGH, P.J., and MACKENZIE and McDONALD, JJ.

CAVANAGH, P.J. Plaintiff Joyce Lown appeals as of right the trial court order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10) in this action under the Persons with Disabilities Civil Rights Act (PWDCRA),[1] MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.* We affirm.

Defendant JJ Eaton Place is a restaurant owned in part by Deanne Davis. In July 1994, Davis hired plaintiff as a prep cook. At that time, plaintiff told Davis that she had "physical problems" that caused her to suffer intermittent pain and cramps. In August 1994, plaintiff was diagnosed with endometriosis. That same month, plaintiff underwent surgery. When she returned to work, plaintiff submitted a note from Dr. Paul Kelly dated August 17, 1994, which stated that plaintiff could "do no heavy lifting or bending until after her 1 month post operative check up."

Plaintiff's duties as a prep cook never caused her any difficulties. Plaintiff testified that she often received help lifting heavy objects, such as bags of onions or carrots. When no assistance was available, plaintiff would make multiple trips with smaller

---

[1] The PWDCRA was formerly known as the Handicappers' Civil Rights Act.

loads. However, periodically during her employment with defendant, plaintiff was required to work as a dishwasher. Plaintiff had no problems when she had help in the dish room, but when assigned to work by herself, she experienced pain while carrying large tubs of dirty dishes and stacks of clean dishes. Plaintiff nevertheless did the work because she was afraid that she would be fired if she refused.

When plaintiff arrived at work the morning of March 27, 1995, she was told by another employee that she would be working alone in the dish room that day. Plaintiff called Davis at home to tell Davis that she could not work in the dish room by herself for eight hours because she had "been up all night hurting." Davis told plaintiff that she had to work in the dish room because several other employees were out sick. After plaintiff refused to do so, Davis told her to go home. When plaintiff returned to work several days later, she discovered that she had been fired.

On October 18, 1996, plaintiff filed her complaint in the instant case. Plaintiff alleged that she was disabled within the meaning of the PWDCRA because she "suffers from endometriosis, which causes her pain in the abdomen and which restricts her ability to lift." Plaintiff further alleged that defendant discharged her because of her status as a disabled individual, even though her disability was unrelated to her ability to perform her job, and that defendant had not discharged other, nondisabled individuals for refusing to perform dishwashing duties.[2]

---

[2] Plaintiff also asserted that her decreased ability to engage in sexual intercourse constituted a disability under the PWDCRA, but she has not pursued this claim on appeal.

On June 24, 1997, defendant moved for summary disposition pursuant to MCR 2.116(C)(10) on the basis that plaintiff had not established that she had a disability as defined in the PWDCRA. Defendant conceded that plaintiff had endometriosis, but asserted that plaintiff was not disabled within the meaning of the PWDCRA because her endometriosis did not substantially limit any major life activities. Following oral argument, the trial court held that plaintiff was not disabled under the PWDCRA and therefore granted defendant's motion for summary disposition.

I

Plaintiff first argues that the trial court erred in refusing to allow her to amend her complaint. Plaintiff presented notes prepared by a physician, dated May 7, 1994, stating that plaintiff "has a mild speech defect and abnormal facies, almost like Down's but no clue [sic] that she has any intellectual limitations." In a brief opposing defendant's motion for summary disposition, plaintiff anticipated that she would be seeking leave to amend her complaint to allege discrimination based on plaintiff's speech defect, abnormal facies, and possible intellectual limitations. At the hearing regarding defendant's motion for summary disposition, plaintiff orally requested leave to amend her complaint, and the trial court denied the request in the same manner.

Plaintiff asserts that the trial court abused its discretion in refusing to allow her to amend her complaint. However, we conclude that this issue is not properly before this Court because no written order or judgment was entered by the trial court on plain-

tiff's request to amend her complaint. A court speaks through its orders, and the jurisdiction of this Court is confined to judgments and orders. *Law Offices of Lawrence J Stockler, PC v Rose*, 174 Mich App 14, 54; 436 NW2d 70 (1989).

In any case, pursuant to MCR 2.118(A)(4), amendments must be in writing. In the instant case, the request to amend was oral, and plaintiff never offered any written amendments. Accordingly, because plaintiff did not comply with the court rule, the trial court did not abuse its discretion in denying the request to amend.[3] See *Burse v Wayne Co Medical Examiner*, 151 Mich App 761, 768; 391 NW2d 479 (1986).

II

Plaintiff next argues that the trial court erred in granting defendant's motion for summary disposition. On appeal, an order granting or denying summary disposition is reviewed de novo. A motion for summary

---

[3] The trial court refused to allow plaintiff to amend her complaint because it concluded that the request was not timely. The Supreme Court has held that delay alone does not warrant denying a motion to amend, but that a motion to amend can be denied if the delay was in bad faith or the opposing party would suffer prejudice. See *Weymers v Khera*, 454 Mich 639, 659; 563 NW2d 647 (1997). A trial court may find prejudice when the moving party seeks to add a new claim or a new theory of recovery on the basis of the same set of facts, after discovery is closed, just before trial, and the opposing party shows that he did not have reasonable notice, from any source, that the moving party would rely on the new claim or theory at trial. *Id.* In the present case, when plaintiff orally requested to amend her pleadings, five days remained before the discovery cutoff date. However, because there was no showing that further discovery was planned on the complaint as originally pleaded, or that the existing discovery gave defendant any notice of the new theories of handicap discrimination, we would conclude that the trial court did not abuse its discretion in denying plaintiff's request to amend her complaint on the basis of undue delay.

disposition may be granted pursuant to MCR 2.116(C)(10) when, except with regard to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Giving the benefit of reasonable doubt to the nonmovant, the trial court must determine whether a record might be developed that would leave open an issue upon which reasonable minds might differ. *Moore v First Security Casualty Co,* 224 Mich App 370, 375; 568 NW2d 841 (1997).

To establish a prima facie case of discrimination under the PWDCRA, a plaintiff must demonstrate (1) that she is disabled as defined by the PWDCRA, (2) that the disability is unrelated to her ability to perform the duties of a particular job, and (3) that she was discriminated against in one of the ways described in the statute. *Rollert v Dep't of Civil Service,* 228 Mich App 534, 538; 579 NW2d 118 (1998). The PWDCRA defines a "disability" as a

> determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic:
>
> (A) For purposes of article 2, *substantially limits 1 or more of the major life activities of that individual* and is unrelated to the individual's ability to perform the duties of a particular job or position or *substantially limits 1 or more of the major life activities of that individual* and is unrelated to the individual's qualifications for employment or promotion. [MCL 37.1103(d)(i);   MSA 3.550(103)(d)(i) (emphasis added).]

On appeal, plaintiff argues that the trial court erred in finding that she was not disabled under the PWDCRA. Plaintiff asserts that she is substantially limited in the major life activity of lifting. In contrast, defendant

argues that lifting does not constitute a "major life activity" under the PWDCRA.

This Court has previously looked to the Americans with Disabilities Act (ADA)[4] and the Rehabilitation Act of 1973[5] for guidance in construing the terms "substantially limits" and "major life activities" as used in the PWDCRA. See *Stevens v Inland Waters, Inc*, 220 Mich App 212, 217; 559 NW2d 61 (1996). For the purpose of interpreting the PWDCRA, the *Stevens* Court relied on federal administrative regulations to define "major life activities" as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." See *id.* at 217. Whether an impairment substantially limits a major life activity is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term effect. *Id.* at 218.

Defendant contends that "lifting" cannot be a major life activity under the PWDCRA because it was not specifically mentioned as such in *Stevens.* We disagree. In *Stevens*, this Court adopted a nonexclusive list of functions that would constitute major life activities under federal regulations. Thus, the fact that lifting is not explicitly included in the list of major life activities in *Stevens* is not dispositive.

In *Koester v Novi*, 458 Mich 1; 580 NW2d 835 (1998), our Supreme Court examined lifting in the context of a PWDCRA claim based on the plaintiff's pregnancy. The Court held that a "restriction limiting [the] plaintiff's lifting abilities to twenty-five pounds is

---

[4] 42 USC 12101 *et seq.*

[5] 29 USC 701 *et seq.*

not a substantial impairment of a major life activity," and therefore the plaintiff had not stated a claim under the PWDCRA. See *id.* at 9. However, the Court focused on whether the plaintiff had demonstrated a substantial impairment of a major life activity and did not address whether lifting itself constitutes a major life activity.

Accordingly, we look to federal regulations and case law for guidance. The interpretative guidelines[6] promulgated by the Equal Employment Opportunity Commission (EEOC) state:

> "Major life activities" are those basic activities that the average person in the general population can perform with little or no difficulty. Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. This list is not exhaustive. For example, other major life activities include, but are not limited to, sitting, standing, *lifting*, reaching. [29 CFR 1630.2(i), Appendix (emphasis added).]

Federal courts, relying on these guidelines, have concluded that lifting constitutes a major life activity. See, e.g., *Gutridge v Clure*, 153 F3d 898, 901 (CA 8, 1998); *Ray v Glidden Co*, 85 F3d 227, 229 (CA 5, 1996); *Dutcher v Ingalls Shipbuilding*, 53 F3d 723, 726, n 7 (CA 5, 1995); *Frix v Florida Tile Industries, Inc*, 970 F Supp 1027, 1033 (ND Ga, 1997).

Nevertheless, federal courts have held that where the major life activity is lifting, a general lifting restriction, without more, is insufficient to constitute

---

[6] Interpretative guidelines are not controlling on federal courts. *Halperin v Abacus Technology Corp*, 128 F3d 191, 199, n 12 (CA 4, 1997). However, federal courts that recognize lifting as a major life activity have looked for guidance to the EEOC's interpretative guidelines on the ADA. See, e.g., *Thompson v Holy Family Hosp*, 121 F3d 537, 539 (CA 9, 1997).

a disability within the meaning of the ADA. See, e.g., *Gutridge, supra; Zarzycki v United Technologies Corp*, 30 F Supp 2d 283, 289 (D Conn, 1998). The Fourth, Fifth, Eighth, and Ninth Circuit Courts of Appeals have held individuals who were limited to lifting less than twenty-five pounds were not, as a matter of law, disabled. See *Thompson v Holy Family Hosp*, 121 F3d 537, 539-540 (CA 9, 1997); *Williams v Channel Master Satellite Systems, Inc*, 101 F3d 346, 349 (CA 4, 1996); *Aucutt v Six Flags Over Mid-America, Inc*, 85 F3d 1311, 1319 (CA 8, 1996); *Ray, supra*.[7] In those cases, the courts essentially concluded that such a limitation is not significant when compared to the limitations and abilities of the general population.

Where the weight restriction is less than twenty-five pounds, several federal courts have indicated that evidence other than the mere existence of the restriction must be presented to create a genuine issue of material fact regarding whether the impairment imposes substantial limitations on major life activities other than work. See *Helfter v United Parcel Service, Inc*, 115 F3d 613, 617 (CA 8, 1997); *Hilburn v Murata Electronics North America, Inc*, 17 F Supp 2d 1377, 1382 (ND Ga, 1998) ("A mere assertion of diminished

---

[7] But see *Mondzelewski v Pathmark Stores, Inc*, 162 F3d 778, 786 (CA 3, 1998) (holding that where the plaintiff, who was restricted from lifting objects weighing more than fifty pounds, presented evidence that there were "very low employment opportunities" for him in his geographical area, he had established a genuine issue of fact regarding whether he was substantially limited in the major life activity of working); *Frix, supra* at 1033-1034 (holding that a twenty-five-pound lifting limitation, when coupled with a limitation on bending and stooping, prevented the plaintiff from performing an entire class of jobs and is a disability under the ADA).

capacity does not constitute a disability under the ADA.").[8]

We find an inherent inconsistency in the approach followed by those federal courts that have held that lifting is a major life activity under the ADA, but then concluded that a lifting restriction alone is insufficient to trigger the protections of that statute, given that the ADA defines a disability as an "impairment that substantially limits one or more of the major life activities of such individual." See 42 USC 12102(2). The PWDCRA, like the ADA, requires that a disability "substantially limit[] 1 or more of the major life activities of [an] individual," MCL 37.1103(d)(i); MSA 3.550(103)(d)(i). This Court has stated that whether an impairment substantially limits a major life activity is determined in part by the nature and severity of the impairment. *Stevens, supra.* "It is not enough that an impairment affect a major life activity; the plaintiff must proffer evidence from which a reasonable inference can be drawn that such activity is substantially or materially limiting." *Snow v Ridgeview Medical Center*, 128 F3d 1201, 1207 (CA 8, 1997). Thus, a plaintiff seeking to recover under the statute has the burden of providing some evidence from which a factfinder could conclude that her disability caused substantial limitations when compared to the average person. See *id.* Nonwork major life activities are

---

[8] But see *Lowe v Angelo's Italian Foods, Inc*, 87 F3d 1170, 1174 (CA 10, 1996) (reversing the trial court's grant of summary judgment, despite the plaintiff's failure to present evidence comparing her ability to lift with the ability of the average person or to demonstrate the effect of her condition on her life away from work); *Whitfield v Pathmark Stores, Inc*, ___ F Supp 2d ___, ___; 1999 WL 222459 (D Del, 1999) (holding that a jury could conclude that the plaintiff, who could not lift more than twenty pounds, was significantly restricted compared to the average person in the general population).

examined in light of whether the person can perform the normal activities of daily living. *Pryor v Trane Co*, 138 F3d 1024, 1027 (CA 5, 1998); *Ray, supra* at 229; *Dutcher, supra* at 726. Therefore, we hold that a lifting restriction constitutes a disability under the PWD-CRA when it imposes substantial limitations on an individual's ability to perform the normal activities of daily living.

Here, viewing the evidence in the light most favorable to plaintiff and granting her the benefit of all reasonable doubt, we conclude that plaintiff did not establish the existence of a genuine issue of material fact regarding the existence of a disability that would entitle her to the protection of the PWDCRA. The medical proofs, at best, establish a temporary lifting restriction that commenced after plaintiff underwent surgery in August 1994. In sworn answers to interrogatories, plaintiff stated that she was restricted from lifting over ten to fifteen pounds from August 1994 through August 1996.[9] At the time of plaintiff's deposition on May 20, 1997, she was able to lift objects weighing up to twenty-five pounds. Federal courts have held that evidence of a twenty-five-pound lifting limitation does not suffice to establish a genuine issue of a material fact regarding the existence of a disability because it is not a substantial limitation when compared to the average person. See *Thomp-*

---

[9] The note from Dr. Kelly, dated August 17, 1994, stated only that plaintiff was restricted from "heavy lifting." Davis testified that the note from Dr. Kelly was the only medical documentation provided by plaintiff. Plaintiff testified that she "thought" that she gave other documentation of her lifting restrictions to Davis, but stated that it was possible that her doctor merely told her of the restrictions, and she in turn told Davis. Other medical records presented by plaintiff do indicate that lifting restrictions in the ten- to fifteen-pound range were imposed, but these records are dated after her employment with defendant was terminated on March 27, 1995.

*son, supra; Williams, supra; Aucutt, supra; Ray, supra.* We adopt this holding, which is consistent with the result reached by our Supreme Court in *Koester, supra.* Accordingly, the fact that plaintiff is unable to lift more than twenty-five pounds does not establish that she is disabled within the meaning of the PWDCRA.[10]

Thus, the evidence establishes only that plaintiff had a temporary lifting restriction of no more than ten to fifteen pounds, which was in place for two years. As a general rule, "[i]ntermittent, episodic impairments are not disabilities, the standard example being a broken leg." *Vande Zande v Wisconsin Dep't of Administration*, 44 F3d 538, 544 (CA 7, 1995), citing 29 CFR 1630.2(j), Appendix. Federal courts have not delineated the precise moment when a "temporary" impairment ripens into a "disability" within the meaning of the ADA, although it is clear that the length of a "temporary" impairment need not be brief. See, e.g., *Colwell v Suffolk Co Police Dep't*, 158 F3d 635, 645 (CA 2, 1998) (seven-month impairment of the plaintiff's ability to work was too short a duration to be substantially limiting); *Halperin v Abacus Technology Corp*, 128 F3d 191, 200 (CA 4, 1997) (back injury that left the plaintiff unable to work for two months was "only transitory"); *Sanders v Arneson Products, Inc*, 91 F3d 1351, 1354 (CA 9, 1996) (psychological impairment precluding work for 3½ months was "not of sufficient duration to fall within the protections of the ADA as a disability"); *Kramer v K & S Associates*, 942 F Supp 444, 446 (ED Mo, 1996)

---

[10] Plaintiff's medical records contain a note dated August 17, 1995, which states that plaintiff's endometriosis would be treatable with surgery, but her financial situation prevented this.

(broken leg that healed completely in approximately six months was a temporary, nonchronic impairment that did not constitute a disability within the meaning of the ADA); *Wilmarth v Santa Rosa*, 945 F Supp 1271, 1276-1277 (ND Cal, 1996) (carpal tunnel syndrome, which lasted approximately two years before being relieved by two surgeries, was a "short-term" disability that did not fall within the scope of the ADA's protections); *Rakestraw v Carpenter Co*, 898 F Supp 386, 390-391 (ND Miss, 1995) (injury that took twenty-two months to heal completely was "transitory," and the plaintiff was therefore not entitled to protection under the ADA).

However, we need not determine whether a two-year impairment constitutes a disability within the meaning of the PWDCRA because plaintiff has presented no evidence from which a factfinder could reasonably infer that her physical impairment affected her ability to perform the normal activities of daily living. While plaintiff asserts in her brief on appeal that there are "obviously *significant* restrictions" on her activities, the only constraint that she has identified is that she cannot bowl.[11]

On the basis of the above, we conclude that plaintiff did not meet her burden of coming forward with evidence to show the existence of a genuine issue of material fact with regard to whether a major life

---

[11] Although plaintiff claims that she "obviously [could not] perform any of the thousands of manual labor jobs which require the ability to lift more than 10-15 pounds," she has not identified any particular activities that she could not perform on or before March 27, 1995. Moreover, to the extent that this particular argument is directed at the work setting, it is not relevant to whether plaintiff is substantially limited in the major life activity of lifting, rather than the major life activity of working. See *Pryor, supra; Ray, supra; Dutcher, supra.*

activity was substantially limited by her endometriosis at the time defendant terminated her employment. It is not sufficient that plaintiff presented evidence that she was discharged while under a lifting restriction of ten to fifteen pounds. Because plaintiff has made no showing that the performance of the normal activities of daily living were affected by the lifting restriction, plaintiff has not established that she was "substantially limited" in a nonwork major life activity. See MCL 37.1103(d)(i)(A); MSA 3.550(103)(d)(i)(A).

Under the interpretative guidelines for the ADA, if an individual is not substantially limited with respect to any other major life activity, the individual's ability to perform the major life activity of working should be considered. See 29 CFR 1630.2(j). Plaintiff asserts that she was substantially limited in the major life activity of working; however, she does not cite any record evidence to support this claim. Relying again on federal regulations for guidance, in order to establish that she was substantially limited in the major life activity of working, plaintiff would be required to demonstrate that she was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." See 29 CFR 1630.2(j)(3)(i). This Court has explained that "[a]n impairment that interferes with an individual's ability to do a particular job, but does not significantly decrease the individual's ability to obtain satisfactory employment elsewhere, does not substantially limit the major life activity of working." See *Stevens, supra* at 218.

During her deposition, plaintiff testified that after defendant terminated her employment, she subsequently worked as a dishwasher at Riedy's Pizza and Denny's Restaurant. Plaintiff explained that these positions involved the same basic dishwashing work that she did when working for defendant, but at both establishments she had help with lifting. Thus, plaintiff presented evidence of only one particular job that she could not do, namely, washing dishes for defendant without aid. On this evidence, plaintiff did not establish that she was substantially limited in the major life activity of working. See *id.*

In sum, plaintiff did not meet her burden of establishing a genuine issue of material fact for trial with regard to the issue whether she was substantially limited in either working or nonworking major life activities. Accordingly, plaintiff did not demonstrate that she is disabled as defined by the PWDCRA, and the trial court did not err in granting defendant's motion for summary disposition.

Affirmed.