# STATE OF MICHIGAN

# COURT OF APPEALS

MARY PAYMENT,

Plaintiff-Appellant,

v

DEPARTMENT OF TRANSPORTATION,

Defendant-Appellee.

UNPUBLISHED
August 10, 2017

No. 332827
Chippewa Circuit Court
LC No. 14-013463-CD

Before: MARKEY, P.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's grant of summary disposition in favor of defendant pursuant to MCR 2.116(C)(10). This matter arose because defendant repeatedly passed plaintiff over for a promotion in favor of applicants plaintiff contends were less qualified. Plaintiff alleges that defendant discriminated against her for her depression and anxiety contrary to the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq*. The trial court concluded that plaintiff was not "disabled" under the PWDCRA and Michigan case law interpreting the act, and even if she was disabled, she had failed to show that defendant either relied on any such disability or retaliated against her in making its hiring decisions. We affirm.

As an initial matter, plaintiff contends that the trial court applied an incorrect standard in evaluating and granting the motion for summary disposition. We decline to consider this issue because our review of a motion for summary disposition is de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). In reviewing a motion decided pursuant to MCR 2.116(C)(10), we review all of the evidence submitted by the parties to determine whether the entire record, considered in the light most favorable to the non-moving party, shows that no genuine question of material fact exists for trial. *Id*. at 118, 120. The trial court correctly stated that the nonmoving party may not withstand a motion for summary disposition merely because there is a possibility that a claim might be supported at trial or by promising to establish an issue of fact. *Id*. at 120-121. Courts may not make credibility assessments in deciding a motion for summary disposition. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). However, a question of material fact may not be established by "speculation and conjecture," and any speculative testimony by witnesses is properly excluded from consideration. *Ghaffari v Turner Const Co*, 268 Mich App 460, 464-465; 708 NW2d 448 (2005).

-1-

Plaintiff substantively argues first that the trial court incorrectly found that she was not disabled, that she did not have a history of being disabled, and that defendant did not perceive her as being disabled. Disability is defined by the PWDCRA as, in relevant part, a determinable mental characteristic of an individual that substantially limits at least one major life activity and is unrelated either to the person's qualifications for their job or ability to perform their job duties. MCL 37.1103(D)(*i*). This includes actually having that characteristic, having a history of that characteristic, or being regarded as having that characteristic. MCL 37.1103(D)(*i*)-(*iii*). To establish a violation of the PWDCRA, a plaintiff must demonstrate, in relevant part, a disability as defined by the PWDCRA and that she has suffered discrimination as defined in the PWDCRA. *Peden v Detroit*, 470 Mich 195, 204; 680 NW2d 857 (2004); *Chmielewski v Xermac, Inc*, 457 Mich 593, 602; 580 NW2d 817 (1998). There is no serious dispute, nor would we entertain any, that depression and anxiety *can* cause one to be "disabled" for the purpose of the PWDCRA.

However, a diagnosis does not categorically translate to a disability under the PWDCRA. *Chmielewski*, 457 Mich at 611; *Chiles v Machine Shop, Inc*, 238 Mich App 462, 474; 606 NW2d 398 (1999). The parties dispute whether plaintiff's condition should be evaluated with or without the benefit of plaintiff's medication. Binding case law from our Supreme Court establishes that courts should consider the mitigating effect of medication when deciding whether a condition is a disability, rejecting arguments to the contrary. *Chmielewski*, 457 Mich at 603-613. We note that although *Chmielewski* cited federal precedent in partial support of that conclusion, it clearly relied primarily on its reading of Michigan's statute, and it further cautioned that a person may well be disabled despite receiving maximally effective treatment. *Id*. Thus, "the law requires the factfinder to assess the individual's condition as it actually exists." *Id*. at 613. Our Supreme Court noted that it agreed with *Sutton v United Air Lines, Inc*, 130 F3d 893, 901 (CA 10, 1997), which, a year after *Chmielewski* was decided, was affirmed by the United States Supreme Court. *Sutton v United Air Lines, Inc*, 527 US 471, 119 S Ct 2139, 144 L Ed 2d 450 (1999).

Plaintiff inexplicably argues that *Chmielewski* is no longer "good law," because after the United States Supreme Court decided *Sutton*, Congress amended the ADA to, in effect, overturn *Sutton*. Michigan has undertaken no similar amendment to the PWDCRA. The PWDCRA and the ADA are not identical, and "federal laws and regulations are not binding authority on a Michigan court interpreting a Michigan statute." *Peden*, 470 Mich at 217. Only a PWDCRA claim is pending in this action. The fact that our Supreme Court found some reasoning in federal cases to be persuasive does not make any then-similar federal law under consideration applicable to Michigan. Indeed, our Supreme Court *explicitly* "caution[ed] against simply assuming that the PWDCRA analysis will invariably parallel that of the ADA." *Id*. A claim under the PWDCRA depends on the statutory language found in the PWDCRA, not on the statutory language found in some other piece of legislation from a different jurisdiction. See *Chiles*, 238 Mich App at 472-473. Because the PWDCRA has not been amended similarly to the ADA, and our Supreme Court has not revisited *Chmielewski*, *Chmielewski* remains "good law." The trial court correctly determined that it must evaluate whether plaintiff is "disabled" on the basis of her condition as it is with the benefit of medication.

Additionally, a "disability" must affect a "major life activity." Major life activities include "'functions such as caring for oneself, performing manual tasks, walking, seeing,

-2-

hearing, speaking, breathing, learning and working.'" *Chiles*, 238 Mich App at 477, quoting *Stevens v Inland Waters, Inc*, 220 Mich App 212, 217; 559 NW2d 61 (1996). "Whether an impairment substantially limits a major life activity is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term effect." *Lown v JJ Eaton Place*, 235 Mich App 721, 728; 598 NW2d 633 (1999). The plaintiff must provide "some evidence from which a factfinder could conclude that her disability caused substantial limitations when compared to the average person." *Id.* at 731. "Nonwork major life activities are examined in light of whether the person can perform the normal activities of daily living." *Id.* at 731-732. The parties correctly agree that any such limitation should be evaluated as of the time of the challenged employment decision. *Michalski v Reuven Bar-Levav*, 463 Mich 723, 735; 625 NW 2d 754 (2001); *Lown*, 235 Mich App at 734-735. Clearly, this would include whether plaintiff had a history of being disabled or was regarded as being disabled at that time, in addition to whether she was actually disabled at that time.

Plaintiff contends that she is nevertheless disabled within the meaning of the PWDCRA even with the benefit of her medication. Plaintiff stated in an interrogatory response that the major life activities suffering substantial limitations were "thinking, concentrating, decision-making, remembering details, sleeping, eating, caring for myself, breathing, cardiovascular functioning, and working." At her deposition, she largely relied on that statement from the interrogatory. This statement would tend to support a finding that she is indeed disabled. However, she also agreed that her medicine allowed her to control both her depression and her anxiety. Her doctor also testified that although there was no such thing as a cure for depression or anxiety, with the use of medicine, plaintiff's symptoms were "pretty much in remission." With the benefit of medication, the evidence indicates that she would no longer be considered disabled under the PWDCRA. Nevertheless, we agree with plaintiff that her hospitalization and the limitations temporarily ordered by her doctor support a finding that she has a *history of* being disabled. Furthermore, the crux of much of plaintiff's argument is that she was penalized for the manner in which defendant accommodated those restrictions, and in light of the evidence that she informed various individuals at defendant that she was disabled, there is at least a question of fact whether defendant *regarded her* as being disabled.

Even if plaintiff were disabled, however, the PWDCRA prohibits various adverse employment actions "*based on* physical or mental disabilities that substantially limit a major life activity of the disabled individual, but that, with or without accommodation, do not prevent the disabled individual from performing the duties of a particular job." *Peden*, 470 Mich at 204 (emphasis added). Plaintiff alleges two adverse actions: she was required to undergo a more rigorous physical examination than she had been required to undergo in previous years, and she was passed over for several promotion opportunities, which in turn she contends was because she had been required to place "NA" in her schedule to effectuate the temporary restrictions. We are unable to discern how the physical examination, even if it was in fact more rigorous, constitutes any of the conduct prohibited by MCL 37.1202.

The significance of the "NA" notations is that defendant uses the number thereof as a performance measurement, and plaintiff alleges that other employees had not been required to report as NA for various reasons of unavailability. Plaintiff contends that one of the supervisors advised her that a large number of NAs looks unfavorable. That is apparently true, but the

evidence unequivocally established that in evaluating plaintiff's candidacy for the promotions, her NAs for the period of her medical restriction were excluded from consideration. We are unable to discern how any consideration given to plaintiff's NAs after her release from restriction would tend to constitute discrimination *because of* any disability. Plaintiff contends that there is a question of fact whether her NAs for that period were genuinely not considered, but other than essentially attacking the credibility of witnesses for defendant, plaintiff fails to demonstrate anything more than a possibility that a jury might choose to discredit them. The mere possibility that a claim or defense could prevail at trial is insufficient. *Maiden*, 461 Mich at 120-121.

It is agreed by the parties that plaintiff and the first person who was promoted over her were "close." Defendant broke the tie on the basis of various other performance metrics that plaintiff believes to be sufficiently ill-considered as to be nonsensical. We find persuasive and agree with the Seventh Circuit that, as a general matter, employers are permitted to make foolish, counterproductive, or otherwise generally bad business decisions. See *Debs v Northeastern Illinois Univ*, 153 F 3d 390, 396 (CA 7, 1998). The dubiousness of an employer's business judgment does not create a question of fact whether an articulated non-discriminatory reason is pretextual. *Town v Michigan Bell Tel Co*, 455 Mich 688, 703-707; 568 NW2d 64 (1997). The PWDCRA is not "a statute designed to enable judges to second-guess, or to improve upon, the business judgments of employers." *Peden*, 470 Mich at 218. We are unpersuaded that plaintiff has even articulated a prima facie case of discrimination beyond her subjective disagreement with defendant's reasons for declining to award her the promotions. In effect, plaintiff merely believes that defendant exercised poor judgment in assessing the relative worth of the candidates. Plaintiff may, in fact, be correct, but the evidence does not show that defendant's judgment was motivated by a discriminatory animus.

Plaintiff also contends that she was retaliated against after she filed a complaint with the United States Equal Employment Opportunity Commission (EEOC). In the complaint she indicated that she had been discriminated against because of her disability, including defendant's use of NAs during her period of accommodation in deciding not to promote her. We note that the PWDCRA's anti-retaliation provision prohibits retaliation or discrimination based on, in relevant part, filing a complaint "under this act." MCL 37.1602(a). The EEOC determination letter references only the ADA, not the PWDCRA. We nevertheless give plaintiff the benefit of the doubt that she made a relevant complaint; furthermore, there is at least enough evidence to create a genuine question of fact whether defendant was aware of that complaint, at least in general terms. A prima facie retaliation case also requires "a causal connection between the protected activity and the adverse employment action." *Aho v Dep't of Corrections*, 263 Mich App 281, 288-289; 688 NW2d 104 (2004).

As discussed, a display of poor business judgment is insufficient to establish a wrongful motive. Likewise, a mere temporal coincidence is also insufficient, especially where the evidence shows that those responsible for the hiring decision did not appear overly concerned by the protected activity. *West v General Motors Corp*, 469 Mich 177, 186-187; 665 NW2d 468 (2003). The employees of defendant all testified to the general effect that they were unaware of plaintiff's complaints, did not discuss them, or treated them as essentially routine. Whether or not it is a wise policy, or even a fair one, rejecting a candidate on the basis of giving a poor interview is routine.

Plaintiff's frustration is entirely understandable. However, the evidence plaintiff provides simply does not establish a causal link between defendant's decisions not to promote her and either her disabilities, if any, or her complaints, if they can be deemed relevant to the PWDCRA. Her questions of fact pertain entirely to exercises of possibly poor business judgment on defendant's part, but for purposes of the instant suit, those are not *material* questions of fact. We appreciate that there is some unfairness in this, the unfortunate fact is that it is *normal* to base hiring decisions as much on whether the interviewer happens to like the interviewee as on objective merit, however that merit is evaluated. Perhaps it should not be so, but that is outside the scope of the PWDCRA or, for that matter, the courts. We find no genuine question of material fact whether defendant impermissibly discriminated against plaintiff on the basis of disability or filing a complaint.

Affirmed.

/s/ Jane E. Markey
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra