*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AUBURN AREA CHAMBER OF COMMERCE, INC.,

        Plaintiff,

and

MATT TETLOFF, RYAN ROUSSEAU, AMANDA KERNSTOCK, HARRISON GUNDEN, and TIM DRUMMOND,

        Appellants,

v

TRACY ARTHUR, BRIAN K. MICHAEL, PHILIP SCOTT HARTSOUGH, SAMANTHA KUNZ, ANGIE GANSSER, LEE KILBOURN, STEVEN VANTOL, and RUSSELL LEONARD,

        Defendants-Appellees.

FOR PUBLICATION
December 10, 2025
12:08 PM

No. 372134
Bay Circuit Court
LC No. 2024-003049-CZ

Before: YATES, P.J., and BOONSTRA and YOUNG, JJ.

YATES, P.J.

On June 5, 2023, something extraordinary happened during a meeting of the Auburn Area Chamber of Commerce (COC). A group of disgruntled COC members attended that meeting, and before that fateful day ended, they purportedly wrested control of the COC from its chosen leaders.

The attempted exercise of power by plaintiffs,[1] Matt Tetloff, Ryan Rousseau, Amanda Kernstock,[2] Harrison Gunden, and Tim Drummond, did not sit well with defendants, who were all duly selected leaders of the COC. Unsurprisingly, this litigation ensued. Plaintiffs claimed in a complaint filed in January 2024 that they had ousted the COC's leadership team and thereafter installed themselves as the COC's leaders, so the actions they took in that capacity after the June 5 meeting were valid. In contrast, defendants contended that they were never dispossessed of their leadership roles in the COC, so plaintiffs' actions taken on behalf of the COC were null and void. In awarding summary disposition to defendants under MCR 2.116(C)(8), the trial court explained that plaintiffs' takeover of the COC was improper, so all of their actions were meaningless as a matter of law. Moreover, plaintiffs had no right to amend the complaint because any amendment would be futile. We affirm.

## I. FACTUAL BACKGROUND

By all accounts, defendants were the members of the board of the COC until June 5, 2023, and plaintiffs are a group of COC members who insist that they became the board members of the COC because of the events that took place at the COC meeting on June 5, 2023.

The parties largely agree about what happened at the meeting on June 5, 2023, but disagree about the legal consequences of those events. As soon as COC President Brian Michael began the meeting, Harrison Gunden "asked to be recognized," but he was refused by both President Michael and Vice President Philip Scott Hartsough. Next, Gunden attempted to make a motion to remove President Michael from presiding over the meeting and to replace Michael with Ryan Rousseau as president pro tem, but his motion was not recognized. Gunden then tried to make a motion to hold a popular vote "by division of the house." According to plaintiffs, it then "was evident" that more people than not supported Gunden's motion. At that point, President Michael attempted to adjourn the meeting, but the parties disagree about whether he properly adjourned the meeting. The parties agree that COC Chair Tracy Arthur, who owned the building where the meeting was taking place, then asked that everyone leave the building.

According to plaintiffs, Gunden and others who had supported his motion left the building and went to a nearby park "to continue the meeting." The group purportedly continued the meeting outside, where motions to remove Michael as president and to remove Hartsough as vice president were approved by popular vote of the participants. After "formal adoption of Robert's Rules of Order and the scheduling of another meeting on June 20,"[3] the meeting was adjourned. Later that

---

[1] This case was filed in the name of the COC, acting under the direction of the people who claimed to be the new leaders of the COC. But because the trial court determined that the people identified as appellants were not the true members of the COC board, those people filed this appeal in their own names because they lacked authority to continue to pursue the claims on behalf of the COC. Thus, we will refer to the people who claimed to be the new leaders as plaintiffs.

[2] Amanda Kernstock is no longer involved in this case because she was dismissed from this appeal for want of prosecution. *Auburn Area Chamber of Commerce v Arthur*, unpublished order of the Court of Appeals, entered February 28, 2025 (Docket No. 372134).

[3] See Robert's Rules of Order, Newly Revised (12th ed).

day, Rousseau, who purported to be acting as president pro tem of the COC, executed a quitclaim deed conveying a piece of property owned by the COC to a group called the Auburn Jaycees.

According to plaintiffs, on June 20, 2023, their group conducted a meeting and appointed Rousseau as chair pro tem. Their group also adopted a revised constitution and bylaws, and elected a governing board for the COC (the new board). The members of the old board—including Arthur, Michael, Hartsough, Sam Kunz, Angie Gansser, Steve VanTol, and Lee Kilbourn—were removed from their positions on the board and censured.

In addition, the new board voted to undertake actions to remove access to the COC's bank account from the old board and provide that access to the new board. Members of the new board tried to access that account, but the old board refused to relinquish control of that account, which prompted the financial institution to freeze the bank account pending a determination of the proper members of the COC's board. Also, plaintiffs alleged that an event called the 2023 Cornfest was cancelled "in large part" because of "interference" from the old board. Plaintiffs contended that the cancellation caused the COC to lose revenue and suffer damage to its reputation.

On January 25, 2024, plaintiffs filed suit, asserting claims of fraudulent misrepresentation, civil conspiracy, violation of common law trademark, and breach of fiduciary duties. Additionally, plaintiffs requested a declaratory judgment, injunctive relief, and monetary damages.

On June 20, 2024, all defendants moved for summary disposition under MCR 2.116(C)(8), asserting that, as a matter of law, the complaint did not establish that plaintiffs had adhered to the procedures necessary to bring a motion to the floor at the June 5, 2023 meeting, as outlined in the COC's constitution and bylaws. Defendants further contended that plaintiffs did not adhere to the procedures necessary to remove officers of the COC or to appoint new officers. Defendants stated that resolution of that issue required a review of the COC's constitution and bylaws, and also noted that the COC is governed by the Nonprofit Corporation Act, MCL 450.2101 *et seq*.

Defendants insisted that President Michael was authorized under the bylaws to preside over regular meetings as well as meetings of the board of directors, so he had the authority to determine the order of business. Defendants contended that Gunden's motion had no effect because President Michael never recognized Gunden, a decision that was within President Michael's authority. They also argued that even if Gunden's motion was properly before the COC, Gunden lacked the power to call for a vote on his own motion under the Nonprofit Corporation Act, MCL 450.2406(2). And as a result, according to defendants, President Michael acted within his authority when he refused to acknowledge Gunden's call for a vote.

Defendants further claimed that President Michael had the right to unilaterally adjourn the meeting under MCL 450.2406(2). Defendants asserted that even if Gunden's motion was properly carried, Rousseau could not have become the presiding officer of the meeting because the COC's vice-president was at the meeting, so he would have been the presiding officer. Beyond that, they insisted that the position to which Rousseau was allegedly appointed, i.e., president pro tem, is not recognized under the COC bylaws. Further, they argued that Rousseau was not properly appointed to that position because the COC bylaws do not give the general membership any authority to fill a vacancy for a presiding officer. Finally, defendants asserted that common sense dictated that the procedure that Gunden attempted to use to unseat President Michael was improper.

Plaintiffs responded on July 5, 2024, conceding that the COC was subject to the Nonprofit Corporation Act and acknowledging the existence of the COC's constitution and bylaws. But they insisted that the "parliamentary procedure for the Auburn Chamber is governed by Robert's Rules of Order." Additionally, plaintiffs argued that because defendants had sought summary disposition under MCR 2.116(C)(8), the trial court was obligated to accept as true the allegation that the COC adhered to Robert's Rules of Order to run its meetings. Plaintiffs acknowledged that when there is no provision in the COC's constitution or bylaws governing a situation, the COC defaults to the Nonprofit Corporation Act.

Plaintiffs described the reason Gunden "rose to be recognized" as important, and because it was "not spelled out in the Complaint," summary disposition pursuant to MCR 2.116(C)(8) was not appropriate because factual developments could have authorized Gunden's conduct. Plaintiffs also discussed possible motives that Gunden could have had when he rose to be recognized. First, plaintiffs explained that Gunden's initial motion was "an attempt to propose an alternative agenda for the June 5 Meeting," so his motion was proper under §41 of Robert's Rules of Order. Second, plaintiffs suggested that "Gunden's course of action might be understood as an attempt to Raise a Question of Privilege," which they asserted was authorized pursuant to §19.1 of Robert's Rules of Order. Plaintiffs further argued that Gunden's second motion was "easily understood as an attempt to remove a presiding officer from the Chair," which they characterized as authorized under §62.2 of Robert's Rules of Order. Without explanation, plaintiffs also asserted that §2.25 and §56.2 of Robert's Rules of Order were "useful in responding to the Defendants' Motion."

In plaintiffs' view, President Michael lacked authority to adjourn the meeting. Citing their complaint, plaintiffs noted that, "pursuant to the established practices of the Chamber, the meeting was never adjourned." Therefore, "the meeting may have continued following President Michael's attempt to adjourn." As a result, plaintiffs reasoned that the "meeting properly persisted when the membership was ejected into the parking lot and elsewhere," at which point President Michael and Vice President Hartsough were absent. Accordingly, plaintiffs claimed that it was proper to install "Rousseau/Gunden" as president pro tem. Finally, plaintiffs insisted that common sense dictated that the trial court must deny summary disposition to defendants. In addition, plaintiffs suggested that if the trial court chose to grant summary disposition to defendants, plaintiffs should be allowed to amend the complaint. Plaintiffs admitted that "[t]he complaint, as currently structured, does not expressly state what Gunden was attempting to accomplish," but plaintiffs promised the trial court that they would include that information if they were granted leave to amend their complaint.

On July 11, 2024, defendants replied, contending that plaintiffs' response was based upon hypotheticals, as opposed to facts. Defendants argued that Robert's Rules of Order did not apply during the June 5, 2023 meeting because plaintiffs' complaint alleged that the new board adopted Robert's Rules of Order after Gunden tried to remove Michael as president. But accepting that as true, adoption of Robert's Rules did not occur until after the June 5, 2023 meeting was adjourned. As a result, the COC meeting was governed by the bylaws, which did not adopt Robert's Rules. Hence, any amendment to the complaint would be futile. Finally, if the COC was considering the agenda, the COC bylaws—as opposed to Robert's Rules of Order—governed.

Defendants also insisted that even if Robert's Rules did apply, summary disposition would still be necessary. Those rules authorized President Michael to adjourn the meeting without a vote, to determine the order of business at the meeting, and to delay recognition of Gunden. According

to Robert's Rules, President Michael could adjourn the meeting without a vote in an emergency, which arose because of the contentious nature of the meeting. Beyond that, nothing indicated that Gunden was attempting to raise a question of privilege.

On July 18, 2024, the trial court conducted a hearing on defendants' motion for summary disposition. Defendants recited the arguments made in their brief. Plaintiffs insisted that, because they alleged that Robert's Rules controlled the COC meeting, that allegation had to be accepted as true for purposes of analysis under MCR 2.116(C)(8). The trial court asked plaintiffs' counsel: "[w]hat in Robert's Rules of Order requires a person during a meeting to recognize a particular individual at a particular time?" Plaintiffs' counsel conceded that he "can't point to anything right now as we sit here," but he nonetheless asserted that "pursuant to Robert's Rules, if someone rises, they need to be at least recognized to be heard and I would make that allegation." The trial court challenged plaintiffs' counsel on that point in the following exchange:

> *THE COURT*. I don't see it in there.
>
> *[Plaintiffs' Counsel]*. Okay.
>
> *THE COURT*. Can you point to it?
>
> *[Plaintiffs' Counsel]*. I can't right now, your Honor.
>
> *THE COURT*. Okay.
>
> *[Plaintiffs' Counsel]*. But if we were given the opportunity to amend, I definitely would.
>
> *THE COURT*. Well, you've read them.
>
> *[Plaintiffs' Counsel]*. Presumably too much, but I can't point directly to— to one direct point at this point in time but I think that it's common sense.

Plaintiffs' attorney then reaffirmed that "we're alleging that at that point in time, they need to be recognized in order to make the appropriate motion."

Plaintiffs' counsel admitted that both the bylaws and the constitution required the board to replace an officer when a vacancy arises, but counsel insisted that the phrase "subject to the will of the membership" in the bylaws gave the members the power to remove board members and elect a new board.

> *THE COURT*. Don't the bylaws and constitution require that the Board replace an officer or choose an officer?
>
> *[Plaintiffs' Counsel]*. In a vacancy?
>
> *THE COURT*. Yes.
>
> *[Plaintiffs' Counsel]*. I believe they do, your Honor.

> *THE COURT*. Okay. So the Board didn't do that.
>
> *[Plaintiffs' Counsel]*. But I believe they only—they only run subject to the will of the membership and that's where that part comes in at. At this point in time, the members had elected to remove the Board members so, there was no Board.

So the members decided to elect a new Board. As plaintiffs' counsel understandably conceded, however, the procedure that his clients employed was "unorthodox."

At the conclusion of the hearing, the trial court awarded summary disposition to defendants because the court agreed with all of the arguments that defendants made. The trial court explained that "there is nothing that indicated that the chair—the president was required to recognize anyone at any particular time for any purpose." Further, no law "would indicate that the president didn't have the authority to adjourn the meeting." The trial court noted that it had reviewed the complaint in the light most favorable to plaintiffs, "but even under Robert's Rules of Order, there's nothing that could save their position because nothing would require the president to have acted differently than he did." Next, the trial court concluded that any amendment of the complaint would be futile because, "[e]ven if we apply Robert's Rules of Order, there are points where it conflicts with the— the specific bylaws and constitution which would control and which would prevent the actions taken by the plaintiffs." The trial court memorialized all of its rulings in a written order issued on July 26, 2024. This appeal followed.

## II. LEGAL ANALYSIS

On appeal, plaintiffs assert that the trial court erred when it awarded summary disposition to defendants under MCR 2.116(C)(8). Additionally, plaintiffs insist that the trial court erred when it denied plaintiffs leave to amend their complaint. We will address each argument in turn.

## A. SUMMARY DISPOSITION

Plaintiffs attack the trial court's decision to grant summary disposition to defendants under MCR 2.116(C)(8). They fault the trial court for confusing a pleading standard with an evidentiary standard, and thereby improperly considering and resolving the factual issue of whether President Michael was obligated to recognize Gunden when he tried to make motions during the meeting on June 5, 2023. "We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion filed under MCR 2.116(C)(8) "tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *Id*. If a case involves an entity's bylaws, those governing bylaws are the law that the trial court must interpret and apply. *Pago v Karamo*, ___ Mich App ___, ___ n 7; ___ NW3d ___ (2024) (Docket No. 371299); slip op at 18 n 7.

When considering a motion under MCR 2.116(C)(8), the trial court "must accept all factual allegations as true, deciding the motion on the pleadings alone." *El-Khalil*, 504 Mich at 160. The motion "may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. The well-pleaded allegations in the complaint are "construed in a light most favorable to the nonmovant." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "[O]nly factual allegations, not legal conclusions, are to be taken as true" for purposes of MCR 2.116(C)(8). *Davis v Detroit*, 269 Mich App 376, 379 n 1; 711 NW2d 462 (2005). "[T]he

mere statement of a pleader's conclusions, unsupported by allegations of fact, will not suffice to state a cause of action." *ETT Ambulance Serv Corp v Rockford Ambulance, Inc*, 204 Mich App 392, 395; 516 NW2d 498 (1994).

Here, plaintiffs blame the trial court for refusing to accept as true plaintiffs' allegations that the June 5, 2023 meeting was a membership meeting and that the COC relied upon Robert's Rules of Order. But the record offers no indication that the trial court treated the June 5, 2023 meeting as anything other than a membership meeting, and plaintiffs have not explained how any confusion about the classification of the meeting led to an erroneous award of summary disposition.

Additionally, the trial court explicitly stated that summary disposition was appropriate even if Robert's Rules of Order applied to the COC meetings, observing that "even under Robert's Rules of Order, there's nothing that could save their position because nothing would require the president to have acted any differently than he did." During the hearing, the trial court questioned plaintiffs' counsel about provisions in Robert's Rules of Order that required President Michael to recognize Gunden. Plaintiffs' counsel admitted that he could not identify any provision in Robert's Rules of Order that prescribed that requirement.

Additionally, plaintiffs assert that they "provided further allegations that their actions were appropriate on the basis of procedures authorized under Robert's Rules of Order or, at the very least, were authorized by the phrase 'subject to the will of the membership' in the Bylaws." First, plaintiffs do not identify when or where those allegations were made, and a review of the complaint does not reveal any such allegations. Second, their contention that governing sources authorized their actions is a legal conclusion, rather than a factual allegation. Accordingly, the trial court was not required to accept it as true for the purpose of summary disposition analysis. *Davis*, 269 Mich App at 379 n 1. In sum, the record reflects that the trial court did not commit any of the errors that plaintiffs allege on appeal.

Beyond the specific issues plaintiffs present on appeal, the record establishes that the trial court appropriately awarded summary disposition to defendants under MCR 2.116(C)(8). In their motion, defendants argued that, as a matter of law, the complaint failed to establish that plaintiffs adhered to the procedures required to bring a motion to the floor at the June 5, 2023 meeting as outlined in the COC constitution and bylaws, and they failed to adhere to the prescribed procedures for removing COC board members or appointing new board members. Defendants correctly note that the bylaws gave President Michael the authority to "preside at all regular and Governing Board of Directors meeting[s] . . . ." Auburn Area Chamber of Commerce Bylaws, Art VI, § 1. Plaintiffs have not cited a provision in Robert's Rules of Order that required President Michael to recognize Gunden at the June, 5, 2023 meeting, or authorized Gunden to make a motion and call for a vote without being recognized.

The trial court questioned plaintiffs' counsel on that issue, asking him to identify a section of Robert's Rules of Order that required President Michael to recognize Gunden and his attempted motions. Plaintiffs' attorney opined that, "pursuant to Robert's Rules, if someone rises, they need to be at least recognized to be heard . . . ." But in response to questioning from the trial court, he acknowledged that he could not cite any provision in Robert's Rules of Order that prescribed that requirement. Instead, he simply contended that it was "common sense." In light of that exchange, the trial court did not err when it ruled that no portion of Robert's Rules of Order required President

Michael to recognize Gunden when he stood up or any of the motions Gunden attempted to make. On appeal, plaintiffs still have not identified any portion of Robert's Rules of Order that provides any such requirement. The fact that the bylaws state that the board has "control and management of the organization, subject to the will of the membership," Auburn Area Chamber of Commerce Bylaws, Art III, § 2, does not provide support for plaintiffs' argument that President Michael was obligated to respond to Gunden's actions.

Plaintiffs' attempts to remove the board members and install themselves as the new board were unsupported by legal authority. Even if President Michael improperly adjourned the meeting, plaintiffs have not identified anything in Robert's Rules of Order, or any other governing authority, that gave them the power to leave the meeting, go to a separate location without the elected board, and conduct COC business in a purported continuation of the original meeting. Indeed, such a rule could lead to bizarre consequences in the event of an improperly adjourned meeting, which could enable attendees to leave the meeting venue, conduct their own meeting at a different location, and vote to remove the existing board.

Plaintiffs' counsel told the trial court that plaintiffs were "empowered to finish the meeting pursuant to Robert's Rules . . . ." He further asserted that even though the bylaws require the board to fill a vacancy, plaintiffs had the authority to do that because of the phrase "subject to the will of the membership" in the bylaws. But as we have decided, that phrase in the bylaws does not provide sweeping authorization for any action that a member desires to undertake. The trial court properly rejected the theory that such a vague phrase authorized such drastic actions by members, especially when the authority to fill vacancies on the board is expressly bestowed on the board in the bylaws. Auburn Area Chamber of Commerce Bylaws, Art III, § 2. Consequently, the trial court's decision to award summary disposition to defendants under MCR 2.116(C)(8) was proper.

## B. LEAVE TO AMEND

Plaintiffs insist that the trial court erred by denying their request for leave to amend their complaint in the wake of the award of summary disposition under MCR 2.116(C)(8). Resolution of a motion to amend the pleadings is "within the sound discretion of the trial court and reversal is only appropriate when the trial court abuses that discretion." *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). If a trial court grants summary disposition under MCR 2.116(C)(8), (9), or (10), then the trial "court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." MCR 2.116(I)(5). Amendment of a complaint "would not be justified if it would be futile." *Ormsby v Capital Welding, Inc*, 471 Mich 45, 53; 684 NW2d 320 (2004). Amendments "must be filed in writing, dated, and numbered consecutively, and must comply with MCR 2.113." MCR 2.118(A)(4).

If a plaintiff does not submit written proposed amendments, but instead only makes an oral request for leave to amend after the trial court grants summary disposition to defendant under MCR 2.116(C)(8), the trial court does not abuse its discretion by denying that request. *Lown v JJ Eaton Place*, 235 Mich App 721, 726; 598 NW2d 633 (1999). Indeed, if "a plaintiff does not present its proposed amended complaint to the court, there is no way to determine whether an amendment is justified." *Anton, Sowerby & Assoc, Inc v Mr. C's Lake Orion, LLC*, 309 Mich App 535, 551; 872 NW2d 699 (2015).

Here, plaintiffs first referred to the possibility of amending their complaint in their response to defendants' motion for summary disposition. There, plaintiffs acknowledged that the complaint did not "expressly state what Gunden was attempting to accomplish," but they promised that "such an assertion will be put forth in a subsequent amended complaint." Plaintiffs briefly mentioned amending their complaint on several occasions at the hearing on defendants' summary disposition motion. But at the end of the hearing, the trial court denied plaintiffs' request because it was futile. See *Ormsby*, 471 Mich at 53.

At no point did plaintiffs submit a proposed amended complaint. Therefore, they failed to comply with the requirement set forth in MCR 2.118(A)(4) that the proposed amendment must be in writing. This case perfectly illustrates the purpose of that requirement because the contents of plaintiffs' contemplated amendment are, at best, vague, and "there is no way to determine whether an amendment is justified." *Anton, Sowerby & Assoc*, 309 Mich App at 551. In light of plaintiffs' failure to comply with the requirement set forth in MCR 2.118(A)(4), the trial court did not commit an abuse of its discretion by denying plaintiffs' request to amend their complaint. See *Lown*, 235 Mich App at 725-726.

Affirmed.


/s/ Christopher P. Yates
/s/ Mark T. Boonstra
/s/ Adrienne N. Young