*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PARKER JOHN SURBROOK,

UNPUBLISHED
March 11, 2026
9:24 AM

Plaintiff-Appellant,

v

No. 375352
Court of Claims
LC No. 24-000068-MZ

MICHIGAN STATE POLICE, JOSEPH GASPER,
and JAMES GRADY,

Defendants-Appellees.

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

In this employment action alleging race discrimination and retaliation under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2102 *et seq.*, plaintiff appeals as of right the Court of Claims (COC) order granting summary disposition in favor of defendants Michigan State Police (MSP), Joseph Gasper (Gasper),[1] and James Grady (Grady)[2] under MCR 2.116(C)(7), (8), and (10).[3] On appeal, plaintiff alleges that the COC erred in granting summary disposition under MCR 2.116(C)(8) and (10) and should have allowed plaintiff the opportunity to amend the complaint. We affirm.

I. FACTUAL AND PROCEDURAL HISTORY

---

[1] Joseph Gasper was the head of the Michigan State Police until he retired effective September 2023.

[2] James Grady is the current director of the Michigan State Police.

[3] In the original complaint, plaintiff also named the state of Michigan and many individual defendants. After defendants moved for summary disposition and plaintiff answered, the parties stipulated to limit the action to the three captioned defendants and to allow plaintiff to file an amended complaint.

-1-

On June 12, 2024, plaintiff filed his amended complaint identifying defendants, MSP, Gasper, and Grady, and alleging race discrimination in violation of the ELCRA, (count I), and retaliation in violation of ELCRA (count II). Specifically, plaintiff, a white male, alleged that he joined the MSP in 2012, and became a member of the canine division in 2017. In 2019, plaintiff was assigned his second canine partner, a German Shepherd named Knox. In October 2019, Gasper, then head of MSP, reportedly addressed command officers and declared that MSP was "way too white and way too male." Additionally, plaintiff noted that, in 2020, there was a movement for police reform and to defund law enforcement.

The complaint asserted that, on November 13, 2020, plaintiff and Knox were on duty as part of the violent crimes task force when he learned of two black males exiting a liquor store and entering a vehicle. The passenger was reportedly carrying a concealed firearm. Plaintiff attempted to initiate a traffic stop, but the vehicle fled at an excessive speed, causing plaintiff to terminate the pursuit. When another officer engaged in the pursuit, plaintiff rejoined the chase. After the suspects' vehicle crashed, the occupants fled on foot. Plaintiff commanded Knox to engage the suspects. Knox was subduing the vehicle driver when the other on-scene officer repeatedly yelled, "Gun!" Plaintiff ran to the suspects' vehicle to remove the gun from the passenger's area. In accord with his training, plaintiff directed Knox to remain engaged with the driver until backup officers arrived. Once backup arrived, plaintiff handcuffed the driver. Both suspects were taken to the hospital because of injuries purportedly sustained in the crash.

Plaintiff claimed that the use of force, specifically the canine bite on the driver, was deemed justified by two different officers. Nonetheless, a complaint was raised against plaintiff, and he was later suspended and charged with assault with a dangerous weapon (namely his canine, Knox) in March 2021. In August 2023, plaintiff was acquitted by a jury of the charge. In October 2023, plaintiff claimed that MSP retaliated against him for the acquittal by recommending that he receive 10 days off without pay. Also, in November 2023, Grady allegedly informed a sergeant that plaintiff's actions were reflective of the 1960s civil rights movement when white police officers committed acts of brutality on black citizens. Plaintiff alleged that he filed a notice of intent to sue on November 22, 2023, with the COC. And when additional claims of retaliation accrued, plaintiff filed a second notice of intent with the COC on May 31, 2024.

Plaintiff alleged that he was discriminated against premised on his race contrary to ELCRA. Specifically, Gasper advised that MSP was "too white" and "too male." Additionally, Grady advised a sergeant that plaintiff's actions with his canine were reflective of the acts of violence committed against the black community in the 1960s. Plaintiff further asserted that retaliation occurred under ELCRA. Particularly, after filing the notice of intent to sue with the COC, defendants' counsel asked plaintiff's counsel to provide a settlement amount. After complying, defendants advised that plaintiff was ordered back to work on December 18, 2023. But plaintiff ultimately was assigned to a civilian administrative position with the e-applications unit, a unit for which he had no training. Additionally, plaintiff was essentially required to restart the police officer certification process without any assistance from defendants. Thus, plaintiff claimed to continue to experience retaliation as a result of his notice with the COC.

Defendants moved for summary disposition under MCR 2.116(C)(7), (8), and (10) in lieu of filing an answer to the amended complaint. Defendants claimed that plaintiff's complaint should be dismissed under MCR 2.116(C)(7) because he failed to comply with the notice

provisions governing the COC as well as the three-year statute of limitations. Defendants further alleged that dismissal was appropriate under MCR 2.116(C)(8) and (10) because plaintiff could not satisfy the elements of his claims. Specifically, defendants noted that the decision to charge plaintiff with assault with a dangerous weapon was made by the county prosecutor, and the district court determined there was probable cause to support the elements of the offense. Further, the circuit court denied the request to quash the charge. Defendants claimed that the comments made by Gasper and Grady were stray remarks that did not support the claims of discrimination and retaliation. Finally, it was asserted that plaintiff could not claim retaliation as a result of his placement in an administrative position because plaintiff, not defendants, failed to take measures to be recertified as a police officer.[4]

Plaintiff opposed the dispositive motion, asserting that his commands to Knox regarding subduing the vehicle driver were consistent with his training. And two supervisors approved of plaintiff's use of force. Following a complaint, plaintiff was investigated, removed from the canine unit, and charged with assault with a dangerous weapon. After a jury trial, plaintiff was acquitted of the charge. Despite the acquittal, plaintiff alleged that defendants continued to retaliate against him by suspending him for 10 days. And plaintiff was ordered to report to an administrative civilian position for which he had no experience. Because of the ongoing retaliation, plaintiff resigned from MSP. Plaintiff asserted that his notice and complaint were timely filed. He further claimed that summary disposition under MCR 2.116(C)(8) was improper because he properly pleaded his claims. Finally, plaintiff alleged that he presented sufficient evidence of Gasper and Grady's discrimination and retaliation against him in light of his race.[5]

In reply, defendants claimed that they were entitled to discipline plaintiff for impropriety. And defendants were not responsible for plaintiff's failure to be recertified and returned to work as a state trooper. The onus was on plaintiff, not defendants, to complete the certification process required under the Michigan Commission On Law Enforcement Standards (MCOLES), MCL 28.603 *et seq.*

---

[4] Plaintiff contends that defendants failed to support their motion for summary disposition with documentary evidence and abandoned their claims by citing little to no authority. But with the motion, defendants submitted as exhibits: (1) the June 17, 2022 district court bindover ruling, (2) the circuit court opinion denying plaintiff's motion to quash, (3) the criminal case register of actions, and (4) plaintiff's May 31, 2024 notice of intent to sue.

[5] With the response to the dispositive motion, plaintiff attached the notice of intent to file claim against the state dated November 16, 2023, and the notice of intent dated May 31, 2024. Both of these notices essentially raise the factual allegations contained in the amended complaint and in the response to defendants' motion for summary disposition. At the conclusion of the notice of intent, it states, "I, Parker J. Surbrook, being first duly sworn, deposes and states under penalty of perjury under the laws of the United States of America and the State of Michigan that the foregoing is true and correct[.]" It did not state that it was premised on personal knowledge. See MCR 2.119(B)(1)(a) "If an affidavit is filed in . . . opposition to a motion it must: (a) be made on personal knowledge. . . .")

The COC issued an opinion and order granting defendants' motion for summary disposition and dismissing plaintiff's complaint with prejudice. The opinion and order pertinently stated:

> For purposes of statutory limitation periods, a claim is deemed accrued when each element of the claim, including damages, exists. Plaintiff alleges that defendants suspended him indefinitely without pay on March 5, 2021, and his claim of racial discrimination accrued on that date.
>
> MCL 600.6431(1) and (3) of the COCA require a plaintiff to file a notice of intent to file a claim against the state with the clerk of the [COC] within six months of the event giving rise to the claim in a case of personal injury or property damage, and within a year of the claim accruing for all other actions. Plaintiff's discrimination claims sound in personal injury, but giving plaintiff every advantage, the Court will apply the one-year notice COCA notice [sic] period. Any claim of discrimination connected to events culminating in plaintiff's March 5, 2021 suspension had to be included in a notice of intent to file a claim by March 5, 2022. Plaintiff did not file his initial notice of intent until November 2023. Timely notice is a condition precedent to filing suit in the [COC]. Absent this notice, the jurisdiction of the [COC] is not triggered and the action must be dismissed. Accordingly, the Court dismisses plaintiff's claims arising from the time period before March 5, 2021.
>
> These claims are also barred by the three-year statute of limitations prescribed by MCL 600.5005(2). As noted, plaintiff's claim of racial discrimination accrued on March 5, 2021. To preserve his challenge to discriminatory acts arising on or before March 6, 2021, plaintiff was required to file his complaint by March 5, 2024. Plaintiff filed his initial complaint on March 15, 2024, 10 days after the expiration of that period. This belated filing further supports dismissal of plaintiff's claims arising from the events leading up to his March 5, 2021 suspension.
>
> The events underlying plaintiff's retaliation claim, however, did not begin until *after* he filed his initial notice of intent. Defendants received timely notice of those claims when plaintiff filed his lawsuit on March 15, 2024. Summary disposition is not warranted for claims connected to these events under MCR 2.116(C)(7).
>
> \* \* \*
>
> Plaintiff failed to state a viable claim of racial discrimination or retaliation against defendant Gasper, supporting summary disposition of the claims against him under MCR 2.116(C)(8). He also failed to overcome the evidence presented by defendants, supporting summary disposition under (C)(10). The only allegation against this defendant relates to a statement he made in 2019. Plaintiff does not allege that Gasper played any role in his suspension or that Gasper's 2019 statement about the demographics of the MSP was in any way connected to his suspension

-4-

and reassignment upon his return to work. Plaintiff does not allege that any of the superior officers who reviewed the dash-cam footage or played a role in the decision to investigate or suspend him shared Gasper's thought. There must be some connection between the statement and an outcome for the statement to have relevance. That connection is absent in this case and the Court dismisses the claims against defendant Gasper.

The Court now turns to plaintiff's claims of racial discrimination and retaliation for alleged actions arising only after his jury-trial acquittal and carried out by defendants MSP or Grady.

MCL 37.2202(1)(a) prohibits employers from discriminating on the basis of race by "[f]ail[ing] or refus[ing] to hire or recruit, discharge[ing], or otherwise discriminat[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . race. . . ." A retaliation claim must be based on an employer's retaliation against an employee for engaging in a protected activity, such as opposing the employer's violation of the ELCRA. MCL 37.2701(a) specifically prohibits an employer from retaliating or discriminating an employee who has "filed a complaint" under the ELCRA.

\* \* \*

Plaintiff suggests that Grady provided direct evidence of discrimination when he described to [Canine Sergeant David] Yount that the dash-cam footage of plaintiff's actions was reminiscent of police brutality against black protesters during the 1960s civil rights movement. Arguably, there is a direct correlation between Grady's statement and racial animus. Grady compared plaintiff's action to the racist actions of white, male officers who employed violence against black citizens. For purposes of this case, the Court will treat this statement as direct evidence.

However, plaintiff failed to adequately allege and support that he was qualified for the position of MSP trooper or that discrimination caused him to be ineligible for a trooper position. Plaintiff was suspended from service on March 5, 2021, and did not return to work until December 19, 2023, 30 months or 2 ½ years later. Plaintiff alleges that he "retained the position of trooper within the" MSP throughout his suspension and should not have been required to be recertified through the Michigan Commission of Law Enforcement Standards (MCOLES) before retaking his position. This limitation of plaintiff's duties upon his return to work were not caused by any potential discriminatory or retaliatory animus by defendants; MCOLES has the sole authority to license law enforcement officers and plaintiff was not licensed at that time.

MCL 28.609(1) provides that the MCOLES act "applies to all law enforcement officers" absent a handful of inapplicable exceptions and states that the employment of law enforcement officers "is subject to the licensing requirements and procedures" of the act. MCOLES alone sets standards for

licensure and training, including for officers who experience a break in service. . . . Plaintiff complains that the MSP provided no guidance on how to achieve recertification through MCOLES, but this information is discoverable in the statutes and administrative rules governing MCOLES and could be requested from MCOLES directly. Simply put, defendants were not authorized to relicense or recertify plaintiff and therefore cannot be liable for failing to do so. Summary disposition is thereby warranted under MCR 2.116(C)(10).

From this decision, plaintiff appeals.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Girimonte v Liberty Mut Ins Co*, 348 Mich App 768, 779; 19 NW3d 921 (2023). A motion for summary disposition premised on MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Id*. The moving party must identify and support the issues to which the moving party contends there is no genuine issue of material fact, and the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted with the motion must be examined. *Pittsfield Charter Twp v Washtenaw Co Treasurer*, 338 Mich App 440, 449; 980 NW2d 119 (2021). Once the moving party makes and supports its motion, the opposing party may not rest on mere allegations or denials in the pleadings, but must submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Id*.

A motion brought under MCR 2.116(C)(8) tests the legal sufficiency of a claim. When examining such a motion, the factual allegations in the complaint must be accepted as true, and the motion is decided premised on the pleadings alone. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*.

Summary disposition under MCR 2.116(C)(7) is appropriate in favor of a defendant if the plaintiff's claims are barred because of immunity granted by law. *Milot v Dep't of Transp*, 318 Mich App 272, 275; 897 NW2d 248 (2016). The application of immunity presents a question of law if reasonable minds could not differ on the legal effect of the facts. See *id*. at 275-276. "When reviewing a motion for summary disposition premised on immunity, this Court examines the affidavits, depositions, admissions, and other documentary evidence to determine whether the moving party is entitled to immunity as a matter of law." *Forton v St Clair Co Public Guardian*, 339 Mich App 73, 82; 981 NW2d 103 (2021).

A trial court's decision regarding a motion to amend the pleadings is reviewed for an abuse of discretion. *Wolfenbarger v Wright*, 336 Mich App 1, 14; 969 NW2d 518 (2021). An abuse of discretion occurs when the trial court selects an outcome that falls outside the range of reasonable and principled outcomes. *Id*.

## III. ANALYSIS

Plaintiff contends that the COC erred in granting summary disposition in defendants' favor under MCR 2.116(C)(8) and (10) and in failing to allow amendment of the complaint. We disagree.[6]

The ELCRA recognizes and declares a civil right to include, "[t]he opportunity to obtain employment, housing and other real estate, and the full and equal utilization of public accommodations, public service, and educational facilities without discrimination because of religion, race, color, national origin, age, sex, heights, weight, familial status, or marital status[.]" MCL 37.2102(1). The recognition of these civil rights set forth in the ELCRA are designed to eliminate the prejudices and biases held against persons because of their membership in a particular class and to dismantle the effects of offensive or demeaning stereotypes, prejudices, and biases. *Rouch World, LLC v Dep't of Civil Rights*, 510 Mich 398, 405; 987 NW2d 501 (2022). An employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2202(1)(a).

Discrimination cases may be established by direct evidence or by indirect or circumstantial evidence. *Sniecinski v Blue Cross & Blue Shield*, 469 Mich 124, 132; 666 NW2d 186 (2003). Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id*. at 132-133 (quotation marks and citations omitted). Direct evidence of discrimination is a rare but sure method of challenging the nature of an employer's decision. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 607; 886 NW2d 135 (2016). Circumstantially, a plaintiff can seek to prove discrimination by demonstrating that the plaintiff was treated unequally when compared to a similarly situated employee without the protected characteristic. *Id*. at 608. In ELCRA cases when no direct evidence of impermissible bias is presented, a plaintiff must offer a rebuttable prima facie case of discrimination. *Hazle v Ford Motor Co*, 464 Mich 456, 462-463; 628 NW2d 515 (2001). The plaintiff must present evidence that (1) he belongs to a protected class, (2) he was subjected to adverse employment action, (3) he was qualified for the position, and (4) the job was given to another person under facts giving rise to an inference of unlawful discrimination. *Id*. at 463.

If the plaintiff successfully demonstrates the prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Dubey v Stroh Brewery Co*, 185 Mich App 561, 563; 462 NW2d 758 (1990). Once the defendant articulates a legitimate reason for its action, the plaintiff has the burden of demonstrating, by a preponderance

---

[6] As an initial matter, we note that the COC granted summary disposition of plaintiff's claims premised on MCR 2.116(C)(7) except with regard to his post-acquittal claims. Plaintiff does not challenge the holdings pertaining to the notice of the claim and the three-year statute of limitations. When an appellant fails to challenge or dispute the basis of the trial court's ruling, the appellate court need not even consider granting the relief requested. *Redmond v Heller*, 332 Mich App 415, 449; 957 NW2d 357 (2020); *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Therefore, plaintiff is not entitled to relief under MCR 2.116(C)(7).

of the evidence, that the legitimate reason offered by the defendant was merely a pretext for discrimination. *Id*.

Documentation offered in support of and in opposition to the dispositive motion must be admissible as evidence. *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d 817 (1999). Mere conclusory allegations that are devoid of detail are insufficient to create a genuine issue of material fact. *Quinto v Cross & Peters, Co*, 451 Mich 358, 362, 371-372; 547 NW2d 314 (1996). When an opposing party provides mere conclusions without supporting his position with underlying foundation, summary disposition in favor of the moving party is proper. See *Rose v Nat'l Auction Group*, 466 Mich 453, 470; 646 NW2d 455 (2002). Affidavits must be premised on personal knowledge and set forth with particularity facts that would be admissible as evidence. *SSC Assocs Ltd Partnership v General Retirement Sys*, 192 Mich App 360, 364; 480 NW2d 275 (1991). See also MCR 2.119(B). And the trial court may only consider substantively admissible evidence, meaning the substance of the evidence was plausibly admissible even if it was not admissible in form. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c).[7] Generally, hearsay evidence is not admissible unless it qualifies under an exception to the rules of evidence. MRE 802; *Merrow v Bofferding*, 458 Mich 617, 626; 581 NW2d 696 (1998). A statement that is an admission by a party-opponent is not hearsay. MRE 801(d)(2)(A). This evidentiary rule "requires that the statement: (1) be offered against a party and (2) be the party's own statement, either in an individual or representative capacity." *Maiden*, 461 Mich at 125 n 8.

Stray or isolated remarks do not generally constitute direct evidence of discrimination. *Krohn v Sedgwick James of Mich, Inc*, 244 Mich App 289, 298-299; 624 NW2d 212 (2001). To determine whether a comment is a stray remark, one must assess whether the remark was made by a decision maker or the employer's agent and uninvolved in the decision, whether the disputed remarks were isolated or a pattern of biased comments, whether the remarks were made close to the time of the challenged decision and whether the remark was ambiguous or reflective of discriminatory bias. *Id*. at 292.

In the present case, plaintiff offered statements that purportedly reflected racial discrimination. First, in 2019, Gasper reportedly told command officers that the MSP was "too white" and "too male." Plaintiff did not present an affidavit or deposition testimony from an individual that directly heard Gasper's comment. And even if we assume without deciding that these statements constituted admissions by a party-opponent, MRE 801(d)(2)(A), plaintiff did not address the factors to determine whether the statements should be deemed stray remarks or reflected a pattern of bias. Analyzing the circumstances, Gasper's comment was a stray remark. Plaintiff failed to present evidence that a year after Gasper's purported remark that he conducted the investigation into plaintiff. Moreover, even if we assume that Gasper performed the investigation into plaintiff's canine incident, it was the prosecutor who had the discretion to charge

---

[7] The Michigan Rules of Evidence were amended effective January 1, 2024. Our citation is to the rule in effect at the time of the alleged statements.

plaintiff with a crime. See *People v Seewald*, 499 Mich 111, 124; 879 NW2d 237 (2016). Moreover, the comment by Gasper regarding the composition of the MSP reflected a position on the gender and race of the then-current demographics of the MSP. Plaintiff did not present evidence whether defendant MSP subsequently commenced recruitment efforts to reflect community populations addressing gender or race or took discriminatory action to eliminate white male police officers from MSP by contriving criminal charges against them and hiring nonwhite police officers in their stead. Additionally, Gasper's comment occurred before plaintiff's November 2020 use of the canine. In short, plaintiff failed to analyze the four factors, and in applying that criteria, it cannot be concluded that Gasper's comment constituted anything other than a stray remark. Accordingly, the COC correctly determined that summary disposition under MCR 2.116(C)(10) of plaintiff's claim of racial discrimination was proper in light of the failure to establish a prima facie case.

Plaintiff also raised a claim of retaliation in his complaint. With respect to retaliation claims, MCL 37.2701 provides:

Two or more persons shall not conspire to, or a person shall not:

(a) Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act.

"[T]o establish a prima facie case of unlawful retaliation under the Civil Rights Act, a plaintiff must show (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 161; 934 NW2d 665 (2019) (quotation marks and citation omitted).

Plaintiff asserts that he established a prima facie case of retaliation by filing his notice of claim and subsequent complaint, that defendants became aware of the filings, and that they retaliated against him through his placement into an administrative "secretarial" position rather than returning him to the position of canine handler. Plaintiff contended that he offered evidence to support the retaliation because Grady told another officer that plaintiff's actions with his canine were reflective of the abusive treatment of black citizens by white police officers in the 1960s. Plaintiff did not present affidavits or deposition testimony from the individual that directly heard these comments. Accordingly, even if we assume without deciding that this statement was not hearsay as an admission by a party-opponent, MRE 801(d)(2)(A), plaintiff again did not analyze the factors to address whether the statement should be deemed a stray remark or a reflection of a pattern of bias.

Nonetheless, even if it was assumed without deciding that this statement was admissible and constituted direct evidence of retaliation, plaintiff did not present evidence that he was qualified to regain the position of trooper or canine handler. Because of the pending criminal charge, plaintiff was suspended from performing as a police officer. And upon his acquittal, defendants noted that plaintiff was required to comply with the certification standards of MCL

-9-

28.609, to be employed as a law enforcement officer. In contrast, plaintiff alleged that defendants did not give guidance regarding his return to his former position. However, MCL 28.609 provides instruction regarding the steps for licensure, commencing with fingerprinting, MCL 28.609(1), and directs the applicant to the promulgated rules for compliance, MCL 28.609(2). There is no indication that defendants control the process for plaintiff's licensing requirements. Accordingly, the COC properly dismissed plaintiff's retaliation claim under MCR 2.116(C)(10).

Lastly, plaintiff contends that the COC erred by failing to grant him the opportunity to amend his complaint under MCR 2.116(I)(5) ("If the grounds [for summary disposition] asserted are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified."). We disagree.

A trial court does not abuse its discretion in denying a request to amend when the plaintiff fails to offer a written amendment in accordance with MCR 2.118(A)(4) ("Amendments must be filed in writing, dated, and numbered consecutively, and must comply with MCR 2.113. Unless otherwise indicated, an amended pleading supersedes the former pleading."). See *Lown v JJ Eaton Place*, 235 Mich App 721, 726; 598 NW2d 633 (1999) ("[P]ursuant to MCR 2.118(A)(4), amendments must be in writing. In the instant case, the request to amend was oral, and plaintiff never offered any written amendments. Accordingly, because plaintiff did not comply with the court rule, the trial court did not abuse its discretion in denying the request to amend."). Plaintiff does not proffer what he would add to an amended complaint such that summary disposition under MCR 2.116(C)(10) was improper. The COC did not err by failing to provide plaintiff with the opportunity to amend his complaint for a second time when he failed to submit a proposed amended complaint in writing.

Affirmed.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick